UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
Nicholas MAGALIOS,                              :
                    Plaintiff,          :       19-cv-6188 (CS)
                                                       :
      – against –                               :
                                                         :
C.O. Matthew PERALTA, et al.,                    :
                                                         :
                  Defendants.        :
-------------------------------------------------------------- X

## DEFENDANTS' OPPOSITION
## TO PLAINTIFF'S PRETRIAL MEMORANDUM

      Defendants submit this memorandum of law in opposition to Plaintiff's Pretrial Memorandum (Dkt. No. 36). Plaintiff seeks to preclude Defendants from offering any evidence, or making reference to: 1) qualified immunity entitlement; 2) Plaintiff's facebook postings; and 3) Plaintiff's criminal history. Defendants noted in the Joint-Pre Trial Order that they may raise qualified immunity as one of their defenses. (Dkt. No. 35). Before evidence can be presented at trial, Plaintiff filed the instant pre-trial memorandum, requesting that the Court deny qualified immunity as an available defense for Defendants. Defendants oppose Plaintiff's Pretrial Memorandum because such request is premature at this stage and because qualified immunity is an available defense for excessive force claims brought under the Eighth Amendment. With respect to Plaintiff's Facebook posts depending on Plaintiff's testimony at trial certain postings may be relevant for impeachment purposes. Finally, Plaintiff's criminal history should be admitted.

## ARGUMENT

### POINT I

### PLAINTIFF'S MEMORANDUM REGARDING QUALIFIED IMMUNITY IS PREMATURE

Qualified immunity shields government officials from liability for civil damages as a result of their performance of discretionary functions, and serves to protect government officials from the burdens of costly, but insubstantial lawsuits. Hartline v. Gallo, 546 F.3d 95, 102 (2d Cir. 2008). "As qualified immunity is an affirmative defense, the defendants bear the burden of proof." Matthews v. City of New York, 899 F. Supp. 2d 418, 432 (E.D.N.Y. 2012) (citing Lore v. City of Syracuse, 670 F.3d 127, 149 (2d Cir. 2012)). In order to deny qualified immunity to a governmental official, a court must find both that (1) the plaintiff has alleged facts that comprise a violation of a constitutional right, and (2) the violated constitutional right was "clearly established" at the time of the official's alleged misconduct." Id.  Moreover, "[e]ven where the law is clearly established and the scope of an official's permissible conduct is clearly defined, the qualified immunity defense also protects an official if it was objectively reasonable for him at the time of the challenged action to believe his acts were lawful." Higazy v. Templeton, 505 F.3d 161, 169-70 (2d Cir. 2007). "That is, officers are entitled to qualified immunity if 'officers of reasonable competence could disagree' as to legality of their action."  Felmine v. City of New York, No. 09 Civ. 3768, 2011 WL 4543268, at *9 (E.D.N.Y. Sept. 29, 2011)(quoting Malley v. Briggs, 475 U.S 335, 341 (1986)). The objective reasonableness inquiry of whether the shield of qualified immunity applies to a defendant's conduct is a mixed question of law and fact. Kerman v. City of New York, 374 F.3d 93, 109 (2d Cir. 2004).

Additionally, qualified immunity applies to failure to intervene claims. "An officer is entitled to qualified immunity unless his failure to intercede was under 'circumstances making it objectively unreasonable for him to believe that his fellow officers' conduct did not violate the plaintiff's rights.' " Holland v. City of New York, 197 F. Supp. 3d 529, 549 (S.D.N.Y. 2016); citing Ricciuti, 124 F.3d at 129.

Here, it is premature to determine at this stage of the litigation – before the commencement of the trial - whether qualified immunity is a viable defense. The evidence must first be presented

to the jury and the jury must then resolve any disputed facts that are material to the qualified immunity issue. Brown v. Turriglio, No. 12 Civ. 175, 2018 WL 4565757, at *3 (N.D.N.Y. Sept. 24, 2018). "Once the jury has resolved any disputed facts that are material to the qualified immunity issue, the ultimate determination of whether the officer's conduct was objectively reasonable is to be made by the court." Zellner v. Summerline, 494 F.3d 344, 368 (2d Cir. 2007). None of those steps have been taken in this case.

Accordingly, Plaintiff's motion should be dismissed or set aside until after the conclusion of the parties' cases at trial.[1]

## POINT II

### QUALIFIED IMMUNITY IS AN AVAILABLE DEFENSE FOR EXCESSIVE FORCE CLAIMS

In Cowan v. Breen, the Second Circuit specifically discussed the steps to evaluate the qualified immunity defense in excessive force claims. 352 F.3d 756, 761 (2d Cir. 2003). The threshold question would be whether plaintiff had shown a constitutional violation, and then, if a constitutional violation can be shown, the court must then determine whether the constitutional right was clearly established at the time of the constitutional violation. Id. This inquiry focuses on "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. This inquiry adds a further dimension to the qualified immunity analysis by acknowledging that reasonable mistakes can be made as to the legal constraints on particular law enforcement conduct. Id.

Qualified immunity is an available defense for excessive force claims brought under the Eighth Amendment. In Henry v. Dinelle, 929 F.Supp.2d 107, 116-17, 121-22 (N.D.N.Y. 2013) aff'd, 557 Fed. Appex 20 (2d Cir. 2014), just like Plaintiff here, inmate plaintiff filed a lawsuit

---

[1] Clearly, if, at the end of the presentation of the evidence, there are no facts under which the defendants would be entitled to qualified immunity, no questions would be presented to the jury. Defendants, however, reserve their right to raise qualified immunity should it be appropriate based on the presentation of the evidence.

against corrections officer defendants based on the claim that the officers used excessive force, in violation of the Eighth Amendment. The jury returned a defense verdict on the basis of qualified immunity, and the plaintiff filed a motion notwithstanding a verdict or, alternatively, for a new trial. Id. at 111. The court there held that the jury's finding that correction officers used force maliciously and sadistically for purposes of causing harm did not preclude the qualified immunity defense because reasonable correctional officials could have mistakenly believed that their brief use of de minimis force did not violate the plaintiff's rights, "because it was necessary to restore discipline, due to the fact that a convicted felon had just 'come off the wall' during a search in a medium-security prison, and the fact that their use of force was pursuant to DOCCS' policy on inmate control." Id. at 121-22.

Plaintiff's entire argument that a qualified immunity defense is incompatible with the elements of an excessive force claim since plaintiff must show that defendants used force "maliciously" fails. It is well-established that a defense of qualified immunity may not be rebutted by evidence that the defendant's conduct was malicious or otherwise improperly motivated. See Blalock v. Jacobsen, No. 13 Civ. 8332, 2014 WL 5324326, at *8 (S.D.N.Y. Oct. 20, 2014)("Evidence concerning the defendant's subjective intent is simply irrelevant to that defense.")(internal citation omitted); see also Rodriguez v. City of New York, No. 97 Civ. 217, 1999 WL 58911, at *4 (S.D.N.Y. Feb. 8, 1999)("While some of the officers and detectives involved in Rodriguez's arrest may have had a retaliatory motive, subjective bad faith is not relevant to the qualified immunity defense"); Henry v. Dinelle, 929 F.Supp.2d at 122-23 (collecting cases).

In King v. Macri, 993 F.2d 294 (2d Cir. 1993), the Second Circuit held that it was proper for the district court to submit special interrogatories regarding qualified immunity to the jury, and reserve the ultimate legal question for the court to determine. Id.

Plaintiff also argues that Defendants "herein are not entitled to qualified immunity in connection with their use of force against plaintiff because defendants deny having used *any* force against plaintiff". However, the Supreme Court regards a defendant's claim that he "didn't do it" as within the scope of the qualified immunity defense on the theory that a defendant who did not take the action alleged by the plaintiff did not violate any clearly established law prohibiting such action. Salim v. Proulx, 93 F.3d 86, 90 (2d Cir. 1996); see Johnson v. Jones, 515 U.S. 304 (1995).

Accordingly, Defendants are entitled to raise qualified immunity as a defense.

## POINT III

## FACEBOOK MAY BE RELEVANT TO CREDIBILITY

At this time, Defendants do not intend to use any of Plaintiff's Facebook posts. Defendants, however, are entitled to inquire into any circumstance that suggest dishonestly. Defendants may use documents that suggests a dishonest character. Fed. R. Evid. 608(a); Rosales v. Kelly, No. 07 CIV. 10554 LAP, 2011 WL 5873374, at *1 (S.D.N.Y. Nov. 14, 2011). Parties are allowed to inquire about underlying circumstances that effect untruthfulness. Id. Under Federal Rule of Evidence 608(b), "specific instances of conduct may be inquired into on cross-examination, at the discretion of the court, if they are probative of a witness's truthfulness or untruthfulness." Id. citing, United States v. Davis, 183 F.3d 231, 257 (3d Cir.), amended, 197 F.3d 662 (3d Cir. 1999).

Plaintiff cites, United States v. Shipp, 2020 U.S. Dist. LEXIS 40473, at *16 (E.D.N.Y. Mar. 9, 2020) to boost this argument that facebook posts were inadmissible due to their unfair prejudice. However, in reading that case more closely, the Court found that the posts had limited probative value because one post was about future plans where admission could not be attached, while the other contained language that may confuse the jury. It was not a general rule for facebook posts, but a decision made looking into these specific posts.

Accordingly, if Plaintiff testifies to anything that may be impeachable, defendants should be allowed to cross-examine him with any document, including facebook posts, that will suggest dishonesty.

## POINT IV

### DEFENDANTS SHOULD BE ALLOWED TO CROSS-EXAMINE PLAINTIFF REGARDING HIS CRIMINAL CONVICTIONS

Defendants should be permitted to cross-examine Plaintiff regarding his 2014 conviction - **a**ttempted Burglary in the Second Degree and Possession of Stolen Property, for which he was incarcerated for at the time of the alleged incident, as well as his 2009 conviction of Burglary in the Second Degree; 2012 conviction of Criminal Possession of Stolen Property in the Third Degree; 2016 conviction of Promoting Prison Contraband in the First Degree; and 2008 arrest and charge of forgery.

Evidence of Plaintiff's crimes are admissible under Federal Rules of Evidence 609(a)(1). Here, the factors weigh in favor of finding the impeachment value of Plaintiff's crime more probative than any prejudicial effect. Although the Second Circuit has held that burglary is not automatically admissible for impeachment purposes under Rule 609(a)(2), it is potentially useful as impeachment under Rule 609(a)(1), because it is a "crime of stealth." Ramsay-Nobles v. Keyser, No. 16 CIV. 5778 (CM), 2020 WL 359901, at *4 (S.D.N.Y. Jan. 22, 2020); citing United States v. Estrada, 430 F.3d 606, 621 (2d Cir. 2005). Burglaries that involve theft makes them more likely to bear on credibility. Ramsay-Nobles v. Keyser, 2020 WL 359901, at *4.

Additionally, a prior conviction for forgery may raise a question of Plaintiff's capacity for veracity, and a conviction for a crime involving dishonesty or false statements is admissible for impeachment purposes regardless of the date of conviction. FRE 609(a)(2). Jolly v. Troisi, No. 92 CIV. 5332 (DAB), 2000 WL 620304, at *2 (S.D.N.Y. May 11, 2000).

Accordingly, Defendants should be allowed to introduce evidence of Plaintiff's criminal

history. Here, the parties' credibility will be of monumental importance to the jury rendering a verdict. Thus, at a minimum, Defendants should be permitted to cross-examine Plaintiff on the fact that he was convicted of multiple felonies. See Olutosin v. Gunsett, No. 14 Civ. 685, 2019 WL 5616889, at *10 (S.D.N.Y. Oct. 31, 2019).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's request in his pre-trial memorandum to preclude Defendants from raising qualified immunity as an available defense, from referencing facebook posts, and from introducing evidence regarding Plaintiff' criminal history.

Dated: New York, New York
April 5, 2021

> LETITIA JAMES
> Attorney General
> State of New York
> Attorney for Defendants
> By:
>  /s/ *Jessica Acosta-Pettyjohn*
> Jessica Acosta-Pettyjohn
> Assistant Attorney General
> 28 Liberty Street- 18th Floor
> New York, NY 10005
> (212) 416-6551