UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
Nicholas MAGALIOS,  :
                  Plaintiff, :    19-cv-6188 (CS)
                    :
      – against – :
                    :
C.O. Matthew PERALTA, et al., :
                    :
                  Defendants. :
------------------------------------------------------------ X

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR A NEW TRIAL, OR REMITTITUR OF THE DAMAGE AWARD

LETITIA A. JAMES
Attorney General
State of New York
<u>Attorney for Defendants</u>
28 Liberty Street
New York, New York 10005
(212) 416-6551

Jessica Acosta-Pettyjohn
Assistant Attorney General
    <u>Of Counsel</u>

**TABLE OF CONTENTS**

                                                              **Page**

PRELIMINARY STATEMENT ............................................................................................3

ARGUMENT      THE DAMAGES AWARDS SHOULD BE VACATED OR
                           SUBSTANTIALLY REDUCED AS A MATTER OF LAW ……..…….... 5

CONCLUSION......................................................................................................................8

## PRELIMINARY STATEMENT

Plaintiff Nicholas Magalios ("Plaintiff") brought this action pursuant to 42 U.S.C. § 1983 alleging that members of the New York State Department of Corrections and Community Supervision ("DOCCS"), Defendants Mathew Peralta ("Peralta") and Timothy Bailey ("Bailey") used excessive force, and Defendants Peralta, Bailey and Edward Blount ("Blount") failed to intervene during an alleged assault that occurred in the pat frisk area at Fishkill Correctional Facility ("Fishkill") on September 3, 2017. The case was tried before a jury between April 26-30, 2021. After deliberations, the jury returned a verdict finding Defendants jointly and severally liable for $50,000 in compensatory damages. The jury also imposed punitive damages of $350,000 against Peralta, $350,000 against Bailey, and $250,000 against Blount.

Defendants now move to renew their motion for a new trial or to vacate or remit the damages awards. For the reasons discussed below, Defendants' motions should be granted.[1]

## STANDARD OF REVIEW

Pursuant to Rule 59 of the Federal Rules of Civil Procedure, "[a] court may grant a new trial 'for any reason for which a new trial has heretofore been granted in an action at law in federal court....'" Graham v. City of New York, 128 F. Supp. 3d 681, 692–93 (E.D.N.Y. 2015)(quoting Raedle v. Credit Agricole Indosuez, 670 F.3d 411, 417 (2d Cir.2012)(quoting Fed.R.Civ.P. 59(a)(1)(A)). Grounds for granting a new trial include a verdict that is against the weight of the evidence, Manley v. AmBase Corp., 337 F.3d 237, 245 (2d Cir.2003), substantial errors in the admission or exclusion of evidence, Stampf v. Long Island R.R. Co., 761 F.3d 192, 203 (2d Cir.2014), prejudicial misconduct from counsel, Pappas v. Middle Earth Condo. Ass'n, 963 F.2d

---

[1] Because the Court is fully familiar with the underlying recent trial, Defendants do not include a separate Statement of Facts section of their brief.

3

534, 540 (2d Cir.1992), and non-harmless errors in jury instructions, United States v. Kozeny, 667 F.3d 122, 130 (2d Cir.2011), or verdict sheets, Armstrong ex rel. Armstrong v. Brookdale Univ. Hosp. & Med. Ctr., 425 F.3d 126, 136 (2d Cir.2005). A jury's verdict should "rarely be disturbed" and a motion for a new trial should be granted only if the court is convinced that the jury's verdict is "seriously erroneous or a miscarriage of justice." Farrior v. Waterford Bd. of Educ., 277 F.3d 633, 635 (2d Cir.2002) (per curiam); see also Carroll v. Cty. of Monroe, 712 F.3d 649, 653 (2d Cir.2013); Raedle, 670 F.3d at 417–18. Such evaluations should be made with a "high degree of deference ... to the jury's evaluation of witness credibility...." ING Global v. United Parcel Serv. Oasis Supply Corp., 757 F.3d 92, 97–98 (2d Cir.2014) (quoting Raedle, 670 F.3d at 418).

A court also has discretion to order a new trial if the verdict appears to be seriously erroneous, and this "discretion includes overturning verdicts for excessiveness and ordering a new trial without qualification, or conditioned on the verdict winner's refusal to agree to a reduction (remittitur)." Graham, 128 F. Supp. 3d at 713 (quoting Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 433 (1996)); see also Roberts v. United Parcel Serv., Inc., 115 F.Supp.3d 344, 372–73, 2015 WL 4509994, at *24 (E.D.N.Y. July 27, 2015) ("A trial court may grant remittitur where it deems a damages verdict excessive."). . Remittitur is "the process by which a court compels a plaintiff to choose between reduction of an excessive verdict and a new trial" Bick v. City of New York, No. 95 Civ. 8781, 1998 WL 190283, at *20 (S.D.N.Y. April 21, 1998), citing, Earl v. Bouxhard Transportation Co., 917 F.2d 1320, 1327 (2d Cir. 1990)). Moreover, remittitur is appropriate "where the award is 'intrinsically excessive' in the sense of being greater than the amount a reasonable jury could have awarded, although the surplus cannot be ascribed to a particular, quantifiable error[.]" Shu-Tao Lin v. McDonnell Douglas Corp., 742 F.2d 45, 49 (2d Cir. 1984).

**ARGUMENT**

**THE DAMAGES AWARDS SHOULD BE VACATED OR SUBSTANTIALLY REDUCED AS A MATTER OF LAW**

The Court should vacate or remit the jury's punitive damages awards as a matter of law because they are not supported by the evidence and are excessive.

It is well-established that punitive damages should not be awarded in § 1983 actions unless "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983). Punitive damage awards must be set aside or reduced where it is so excessive as to shock the judicial conscience and thereby constitute a denial of justice. See Zarcone v. Perry, 572 F.2d 52, 56 (2d Cir. 1978). To determine whether such an award is excessive, the Supreme Court has identified three "guideposts" in its evaluation: "1) the degree of reprehensibility; 2) the disparity between the harm or potential harm and the punitive damages award; and 3) the difference between the remedy and the civil penalties authorized or imposed in comparable cases." DiSorbo v. Hoy, 343 F.3d 172, 186 (2d Cir. 2003) (citing BMW of N. Am. v. Gore, 517 U.S. 559, 574-75 (1996)).

Here, none of the three Gore factors describe Defendants' conduct. First, "[r]eprehensibility . . . entails more than merely asking whether the conduct was unacceptable." Id. (citing Lee v. Edwards, 101 F.3d 805, 809 (2d Cir. 1996)). "[A]ggravating factors" to consider in assessing the degree of reprehensibility include "1) whether a defendant's conduct was violent or presented a threat of violence; 2) whether a defendant acted with malice as opposed to mere negligence; and 3) whether a defendant has engaged in repeated instances of misconduct." Id. (citing Gore, 517 U.S. at 576).

Here, the only demonstrable injuries sustained by Plaintiff were a few red marks, minor injuries that hardly speak of a malicious assault where Plaintiff was allegedly kicked and punched for approximately thirty to sixty seconds. (Nicholas Magalios Trial Transcript ("Magalios Tr. Trans."), 165:11-166:4, 239:2-7).[2] Moreover, there is no evidence that Defendant Blount physically assaulted Plaintiff or that he did, in fact, have time to intervene to stop any alleged assault. Moreover, there is no evidence that any Defendant previously engaged in like conduct. To the contrary, the evidence showed that there was virtually no interaction between any of the Defendants and Plaintiff before or after this incident. (Magalios Tr. Trans., 267:6-268:11). In fact, during the only interaction after this incident, Plaintiff contends he told Defendant Blount to "fuck off," and far from retaliate and assault Plaintiff, Blount just walked away. (Magalios Tr. Trans., 268:12-23, 182:14-183:1). Accordingly, the reprehensibility factor does not weigh in favor of a high punitive damages award. see DiSorbo, 343 F.3d at 183-188.

The second guidepost also favors reducing the punitive damages because a significant disparity exists between any evidence of harm and the awards. Under this factor, "courts must ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 426 (2003). Here, the total punitive damages ($950,000) is 19 times the compensatory damages ($50,000). Even if the individual Defendants' shares of liability are considered separately, the ratios are still grossly disproportionate (Peralta 7:1; Bailey 7:1; Blount 5:1). In this Circuit, ratios above four-to-one are generally considered improper. See, e.g.,

---

[2] While Plaintiff alleged that he suffered a permanent shoulder injury necessitating surgery and the need for continual pain medication, this argument was apparently rejected by the jury based on the $50,000 compensatory damages award and plaintiff's own testimony that he did not take any medication or seek any medical treatment after his release from DOCCS custody, and works at Local 52 building sets for movies and TV shows. (Magalios Tr. Trans., 281: 1-5; 282:1-10).

Jennings v. Yurkiw, No. 14-cv-6377, 2018 WL 5630454, at *17 (E.D.N.Y. Oct. 31, 2018) (collecting cases).[3]

Finally, Gore's third guidepost also favors remittitur. A review of comparable cases indicate that the award is excessive. For instance, in DiSbarro, a police officer arrested one of the plaintiffs after she spurned his advances at a bar. DiSbarro, 343 F.3d at 176-77. At the police station, and while handcuffed "and defenseless," that officer then grabbed her throat, slammed her against the wall, choked her until she was unable to breath and began to lose her vision, threw her onto the floor and struck her repeatedly. Id. at 177, 184. The plaintiff's injuries were "well-documented" by the medical evidence and included two large hematomas on her head and significant bruising over her upper body, including "pressure point bruises" on her neck and ear, which corroborated her testimony that she was choked. Id. at 179. The jury awarded a total of $1,270,000 in punitive damages against that defendant. Id. at 181. However, on appeal, the Second Circuit determined the verdict was excessive and ordered a new trial unless the plaintiff agreed to remit almost $1.2 million and accept a $75,000 punitive damages award. Id. At 189.[4]

Similarly, in Payne v. Jones, 711 F.3d 85, 88 (2d Cir. 2013), the defendant slapped the plaintiff on the side of his head and, after the plaintiff kicked the defendant in the groin, the defendant also punched the plaintiff in the face and neck seven to ten times and kneed him in the back several times, all while the plaintiff was handcuffed. Plaintiff introduced medical evidence

---

[3] See Alla v. Verkay, 979 F. Supp. 2d 349, 374 (E.D.N.Y. 2013) (quoting Grabinski v. Blue Springs Ford Sales, Inc., 203 F.3d 1024, 1026 (8th Cir. 2000), cert. denied, 531 U.S. 825 (2000)) (noting absence of Second Circuit precedent when computing ratios where defendants are joint and severally liable for compensatory damages but individually liable for punitive damages, and adopting Eight Circuit approach of "'divid[ing] the individual punitive damages awards by the individual pro rata shares of the actual damages'").

[4] The jury's $400,000 compensatory damages award was also reduced to $250,000. DiSbarro, 343 F.3d at 185-86.

that showed, inter alia, that he had a bloody and swollen face following the incident. Id. The jury awarded the plaintiff $300,000 in punitive damages. Id. at 90. On appeal, the Second Circuit determined the award was excessive, noting that in police misconduct cases in which a punitive damages award of $150,000 or more was sustained, "the wrongs at issue" in those cases "were more egregious" than in Jones. Id. at 105.

The Court in Payne held that "our survey shows that we have never approved a punitive award against an individual police officer as large as the $300,000 award here. We have described awards ranging from $125,000 to $175,000 as "substantial," King v. Macri, 993 F.2d 294, 299 (2d Cir.1993), and we have ordered remittitur of awards as low as $75,000, see id. (reducing the award to $50,000); see also DiSorbo, 343 F.3d 172, 189 (2d Cir.2003) (reducing a $1.275 million award to $75,000); Lee, 101 F.3d at 813 (reducing a $200,000 award to $75,000 where defendant officer struck plaintiff, who was handcuffed, 8 or 9 times in the head with his baton, causing plaintiff to lose consciousness and sustain cuts and contusions to his head); King, 993 F.2d at 299 (reducing a $175,000 award to $100,000).

Here, in stark contrast to DiSbarro and Payne, Plaintiff was not restrained during the incident and there was no evidence of any serious, medically-corroborated injury in the record comparable to the injuries sustained by plaintiffs in those cases. Moreover, Plaintiff's account of what Defendants' actions were falls well short of the egregious conduct shown in DiSbarro or Payne. Accordingly, the punitive damage awards in this case are excessive. See Denman v. Sanders, No. 05-cv-25, 2006 WL 452018 (S.D.N.Y. Feb. 24, 2006) (reducing $600,000 total punitive damages award to $200,000 where defendant punched plaintiff once in the head, which caused bleeding, pain, and a permanent ¼ inch scar).

Defendants' motion to vacate or remit the damages awards should therefore be granted.

## **CONCLUSION**

For the reasons set forth herein, Defendants respectfully request that this Court order a new trial pursuant to Rule 59, or order Plaintiff to remit a substantial portion, if not the entirety, of the $950,000 punitive damages awarded.

Dated: New York, New York
June 28, 2021

LETITIA JAMES
Attorney General
State of New York
Attorney for Defendants

By: */s/ Jessica Acosta-Pettyjohn*
Jessica Acosta-Pettyjohn
Bruce J. Turkle
Assistant Attorneys General
28 Liberty Street, 18th Floor
New York, NY 10005
Tel: (212) 416-6551; -8524
Jessica.acosta-pettyjohn@ag.ny.gov
Bruce.Turkle@ag.ny.gov