## United States District Court
## for the Southern District of New York

Nicholas Magalios,

               Plaintiff,

   v.

C.O. Mathew Peralta,
C.O. Timothy Bailey,
and C.O. Edward Blount,

             Defendants.

Docket No. 7:19-cv-06188 (CS)

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL OR REMITTITUR OF THE DAMAGES AWARD

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... ii

PRELIMINARY STATEMENT ................................................................. 1

ARGUMENT ............................................................................................. 4

   I.   Defendants' Conduct was Reprehensible ........................................... 4

     A.   Violence ............................................................................................. 4

     B.   Deceit and Malice ......................................................................... 7

     C.   Repeated Instances of Misconduct ............................................. 8

   II.   The ratio between compensatory and punitive damages is not excessive, and other courts have sustained similar awards. ........................... 9

     A.   Ratio ................................................................................................. 9

     B.   Similar Cases ................................................................................. 13

   III.   Civil and Criminal Penalties ...................................................... 15

   IV.   Additional factors ancillary to *Gore* support the punitive damages award . 17

CONCLUSION ....................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Alla v. Verkay*,
  979 F. Supp. 2d 349 (E.D.N.Y. 2013) ........................................................ 8

*Anderson v. Aparico*,
  25 F. Supp. 3d 303 (E.D.N.Y. 2014), *aff'd sub nom. Anderson v. County of Suffolk*,
  621 F. App'x 54 (2d Cir. 2015)................................................................. 16

*Anderson v. Osborne*,
  2020 U.S. Dist. LEXIS 194371 (S.D.N.Y. 2020) ............................... 14, 15

*Blackledge v. Carlone*,
  126 F. Supp. 2d 224 (D. Conn. 2001) ................................................... 14

*BMW of North America, Inc. v. Gore*,
  517 U.S. 559 (1996) .................................................................... passim

*Cabral v. City of New York*,
  2015 U.S. Dist. LEXIS 105392 (S.D.N.Y. 2015) ..................................... 4

*Ciraolo v. City of New York*,
  216 F.3d 236 (2d Cir. 2000)................................................................... 19

*Cooper Indus. v. Leatherman Tool Grp., Inc.*,
  532 U.S. 424 (2001) ............................................................................. 17

*Denman v. Sanders*,
  2006 U.S. Dist. LEXIS 7612 (S.D.N.Y. 2006) ........................................ 13

*DiSorbo v. Hoy*,
  343 F.3d 172 (2d Cir. 2003)..................................................................... 8

*Dixon v. Agbai*,
  2016 U.S. Dist. LEXIS 88844 (S.D.N.Y. 2016), *report and recommendation
  adopted*, 2016 U.S. Dist. LEXIS 134490 (S.D.N.Y. 2016) ...................... 16

*Doe v. Green*,
  2021 U.S. Dist. LEXIS 82577 (S.D.N.Y. 2021), *report and recommendation
  adopted*, 2021 U.S. Dist. LEXIS 101560 (S.D.N.Y. 2021) .........................7

*Duarte v. St. Barnabas Hosp.*,
  341 F. Supp.3d 306 (S.D.N.Y. 2018) ..................................................... 17

*Francis v. City of New York*,
2019 U.S. Dist. LEXIS 197034 (S.D.N.Y. 2019) ...................................................... 19

*Ginsberg v. Valhalla Anesthesia Assocs., P.C.*,
1997 U.S. Dist. LEXIS 16681 (S.D.N.Y. 1997) ........................................................ 5

*Grabinski v. Blue Springs Ford Sales, Inc.*,
203 F.3d 1024 (8th Cir. 2000), *cert. denied*, 531 U.S. 825 (2000) .................... 11, 12

*Greenaway v. County of Nassau*,
327 F. Supp. 3d 552 (E.D.N.Y. 2018) ...................................................... 13

*Hughes v. Patrolmen's Benev. Ass'n of City of New York, Inc.*,
850 F.2d 876 (2d Cir. 1988) .......................................................... 9

*Jackson v. Tellado*,
2018 U.S. Dist. LEXIS 145339 (E.D.N.Y. 2018) ............................................... 8, 13

*Jennings v. Yurkiw*,
2018 U.S. Dist. LEXIS 186602 (E.D.N.Y. 2018) ..................................................... 4

*Kemezy v. Peters*,
79 F.3d 33 (7th Cir. 1996) ....................................................... 19

*Kolstad v. ADA*,
527 U.S. 526 (1999) ....................................................... 18

*Launders v. Steinberg*,
39 A.D.3d 57 (1st Dep't 2007) ................................................. 18

*Lee v. Edwards*,
101 F.3d 805 (2d Cir. 1996) ................................................... 3, 4, 17, 19

*Lewis v. City of Albany Police Dep't*,
547 F. Supp. 2d 191 (N.D.N.Y. 2008), *aff'd* 332 F. App'x 641 (2d Cir. 2009) .... 8, 13

*Mathie v. Fries*,
121 F.3d 808 (2d Cir. 1997) ....................................................... 7

*Metromedia Co. v. Fugazy*,
983 F.2d 350 (2d Cir. 1992) ....................................................... 7

*Noonan v. Becker*,
2018 U.S. Dist. LEXIS 60704 (S.D.N.Y. 2018) ....................................................... 8

*Payne v. Jones*,
711 F.3d 85 (2d Cir. 2013) ....................................................... 10

*Queenie, Ltd. v. Nygard Int'l,*
204 F. Supp. 2d 601 (S.D.N.Y. 2002) ........................................................ 9

*Rangolan v. County of Nassau,*
370 F.3d 239 (2d Cir. 2004) ...................................................................... 9

*Roy Export Co. Establishment of Vaduz, Liechtenstein v. Columbia Broad. Sys.,
Inc.,*
672 F.2d 1095 (2d Cir. 1982) .................................................................... 9

*Rupert v. Sellers,*
48 A.D.2d 265 (4th Dep't 1975) .............................................................. 19

*Smith v. Wade,*
461 U.S. 30 (1983) ................................................................................ 19

*Tatum v. City of New York,*
668 F. Supp. 2d 584 (S.D.N.Y. 2009) ...................................................... 9

*Theodat v. City of New York,*
2019 U.S. Dist. LEXIS 157274 (E.D.N.Y. 2019), *aff'd on other grounds*, 2020 U.S.
App. LEXIS 20840 (2d Cir. 2020) .......................................................... 18

*Thomas v. Kelly,*
903 F. Supp. 2d 237 (S.D.N.Y. 2012) .................................................... 10

*United States v. Hylton,*
590 F. App'x 13 (2d Cir. 2014) .............................................................. 18

*Wright v. Musanti,*
887 F.3d 577 (2d Cir. 2018) ........................................................ 6, 10, 19

**Statutes**

18 U.S.C. § 242 ...................................................................................... 15, 16

42 U.S.C. § 1983 .................................................................................... 13, 16

N.Y. Penal Law § 120.07 ............................................................................ 15

N.Y. Pub. Off. Law § 17 ............................................................................. 11

**Rules**

Fed R. Civ. P. Rule 59 ................................................................................ 1, 6

# United States District Court
## for the Southern District of New York

Nicholas Magalios,

                Plaintiff,

    v.

C.O. Mathew Peralta,
C.O. Timothy Bailey,
and C.O. Edward Blount,

                Defendants.

Docket No. 7:19-cv-06188 (CS)

**Memorandum of Law in Opposition to Defendants' Motion for a New Trial or Remittitur of the Damages Award**

## PRELIMINARY STATEMENT

Plaintiff submits this memorandum of law in opposition to defendants' motion pursuant to Fed R. Civ. P. 59 for a new trial or a remittitur of the jury's punitive damages awards. Plaintiff respectfully requests that defendants' motion be denied in its entirety.

For the purposes of this motion, plaintiff assumes this Court's familiarity with the facts underlying this trial. Nevertheless, plaintiff feels constrained to highlight certain salient factors that justify the jury's awards.

Defendants, with no legitimate penological purpose, collectively engaged in what properly can be considered a malicious and premeditated "gang assault" of a prisoner under their care, custody, and control. Two of the defendants, Peralta and Bailey, were not even assigned to the strip-frisk area where the assault took place, and therefore would have had to have purposely left their assigned posts before the

end of the visiting period and entered the strip-frisk area with the express intention of assaulting plaintiff. As further evidence of their premeditation, immediately prior to the assault, defendants removed from the area any other inmates so as not to have any eyewitnesses, and then directed those inmates to stand with their faces against the wall. Defendants then not only denied altogether having used any force against plaintiff, and falsely accused plaintiff of having fabricated the entire incident, but also subsequently threatened plaintiff and taunted him by reminding him of the brutal and humiliating ordeal to which they subjected him.

During the trial of this action, defendants continued their offensive behavior by laughing and snickering among themselves and, in one case, hurling a profanity at plaintiff from the witness stand. Such conduct demonstrates a complete lack of remorse for the underlying incident, and further indicates that being named as defendants in this lawsuit and being subjects of an investigation by the DOCCS Office of Special Investigation has not chastened defendants nor likely deterred them from engaging in similar conduct in the future. For that reason, the jury's award of substantial punitive damages not only is justified, but also is necessary to deter defendants from repeating such reprehensible conduct.

Defendants' sole argument in this post-trial motion is that the punitive damages awards are unsupported by the evidence and excessive in light of the so-called *Gore* factors.[1] This argument fails for several reasons.

First, it is clear from the record that defendants' conduct was highly reprehensible. Indeed, defendants committed precisely the kind of flagrant misconduct against plaintiff that courts consider en route to sustaining significant punitive damages awards. Second, the jury's punitive damages award is not so disproportionate to the compensatory damages award as to require a reduction of the punitive damages. Courts have long recognized that there is no bright-line rule with regard to the ratio between punitive and compensatory damages awards; similar awards have therefore been sustained before. Third, there also exist comparable civil and criminal penalties which justify the awards. Finally, there exist other factors ancillary to *Gore* which bear on the purpose and propriety of punitive damages, including but not limited to the vindication of the public interest and defendants' complete lack of remorse for their conduct.

---

[1] As defendants point out, *see* Defendants' Motion, at p. 5, the *Gore* guideposts include "(1) the degree of reprehensibility of the tortious conduct; (2) the ratio of punitive damages to compensatory damages; and (3) the difference between this remedy and the civil penalties authorized or imposed in comparable cases." *Lee v. Edwards*, 101 F.3d 805, 809 (2d Cir. 1996) (citing *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575 (1996)).

**ARGUMENT**

## I. Defendants' Conduct was Reprehensible

"The degree of reprehensibility is '[p]erhaps the most important indicium of the reasonableness of a punitive damages award.'" *Jennings v. Yurkiw*, 2018 U.S. Dist. LEXIS 186602, at *49 (E.D.N.Y. 2018) (quoting *Gore*, 517 U.S. at 575). "Conduct marked by violence is more reprehensible than conduct that does not involve violence." *Cabral v. City of New York*, 2015 U.S. Dist. LEXIS 105392, at *18 (S.D.N.Y. 2015) (citing *Gore*, 517 U.S. at 575). The same holds true for deceit. *See id.* "This principle reflects the accepted view that some wrongs are more blameworthy than others." *Id.* In assessing the reprehensibility of a defendant's actions, courts should consider certain aggravating factors, such as "(1) whether a defendant's conduct was violent or presented a threat of violence, (2) whether a defendant acted with deceit or malice as opposed to acting with mere negligence, and (3) whether a defendant has engaged in repeated instances of misconduct." *Lee*, 101 F.3d at 809 (citing *Gore*, 517 U.S. at 574). Viewed in light of those factors, defendants' actions were clearly highly reprehensible.

### A. Violence

Defendants' argument that the punitive damages award is grossly excessive compared to the reprehensibility of defendants' conduct is without merit in light of the testimony and evidence elicited at trial. In their brief, defendants make two primary arguments for why the attack on plaintiff was not "malicious": first, they claim that "the only demonstrable injuries sustained by Plaintiff were a few red

–4–

marks, minor injuries that hardly speak of a malicious assault…"; second, they claim that "there is no evidence that Defendant Blount physically assaulted Plaintiff or that he did, in fact, have time to intervene to stop any alleged assault." *See* Defendants' Motion, at p. 6. Putting aside that there is not always a correlation between the evil intent behind a malicious attack and the eventual injuries a victim suffers, defendants' claims are demonstrably false.

A shoulder injury requiring surgery is not a minor injury akin to a "red mark[]." Defendants shrug off this reality by burying, in a footnote, the claim that, "while Plaintiff alleged that he suffered a permanent shoulder injury necessitating surgery and the need for continual pain medication, this argument was apparently rejected by the jury based on the $50,000 compensatory damages award and plaintiff's own testimony…" *See* Defendants' Motion, at p. 6, n.2. However, absent special interrogatories, defendants' argument that the jury rejected any correlation between plaintiff's shoulder injury and his subsequent surgery is nothing more than unsupported conjecture; it also disregards the rule that on a motion for remittitur, the court must review the evidence in the light most favorable to the plaintiff and give him the benefit of all reasonable inferences that may have been drawn from the jury. *See Ginsberg v. Valhalla Anesthesia Assocs., P.C.*, 1997 U.S. Dist. LEXIS 16681, at *3 (S.D.N.Y. 1997). Here, there was more than ample evidence in the form of plaintiff's testimony, *see* Trial Transcript (hereinafter "Transcript"), at 180:7-20, and in the form of expert testimony, *see id.* at 216:19-25, attributing plaintiff's shoulder pain and need for shoulder surgery to the violent assault by defendants.

The jury was able to find, and—plaintiff would submit—almost certainly *did* find that plaintiff suffered a serious shoulder injury requiring surgery as a result of defendants' reprehensible conduct. The Court should reject defendants' wishing it were otherwise. *See Wright v. Musanti*, 887 F.3d 577, 588 (2d Cir. 2018) ("[Defendant] asserts that the award of punitive damages was erroneous because there was no evidence of the requisite 'high degree of moral turpitude' required to impose that sanction…But this unadorned argument is premised on [defendant]'s version of the facts, which the district court was free to, and did, reject.").

Defendants also claim, without citing to the record, that "there is no evidence that Defendant Blount…ha[d] time to intervene to stop any alleged[2] assault." This point fares no better. Trial counsel stipulated to Blount's presence in the room where plaintiff alleged the assault occurred, *see* Transcript, at 55:13-18, which was confirmed by witness Nicholas Giannini, *see id.* at 340:13-16, and plaintiff testified that Blount was present during the assault and did nothing to intervene. *See id.* at 152:12, 160:8-19, 265:18-20. In any case, it is clear that the jury believed plaintiff and found that Blount indeed failed to intervene to stop the malicious assault against plaintiff:[3] Here, again, the jury's verdict and assessment of the witnesses' credibility should outweigh defendants' speculation, which finds no support in the

---

[2] Defendants' argument that defendant Blount did not have time to intervene in an assault that defendants maintain never happened also is at odds with itself.

[3] That Blount, who conducted the post-incident strip frisk of a visibly injured Magalios, did not send plaintiff to the infirmary further demonstrates that Blount acted in concert with the other defendants in the use-of-force and/or its cover-up.

record. *See, e.g.*, *Metromedia Co. v. Fugazy*, 983 F.2d 350, 363 (2d Cir. 1992) (Under Rule 59, "[w]here the resolution of the issues depended on assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial.").

### B.    Deceit and Malice

Conspicuously absent from defendants' papers is an acknowledgment of what plaintiff, whom the jury deemed credible, testified to concerning what the officers *did* do. According to plaintiff, the officers premeditatedly targeted him, removed from the scene any potential eyewitnesses, and then brutally beat him with no penological justification. Immediately after the assault, Peralta, in Bailey's presence, threatened plaintiff with further harm if he reported the incident. In the days immediately following the incident, Bailey and Blount taunted plaintiff about the incident. Defendants also denied having used any force against plaintiff, and asserted that plaintiff fabricated the story entirely. Accepting plaintiff's version of events, the jury certainly was able to find that defendants acted with deceit and malice.

This case represents the exact kind of abuse of authority, deceit, and malice sufficient to warrant punitive damages. *See Doe v. Green*, 2021 U.S. Dist. LEXIS 82577, at *23 (S.D.N.Y. 2021), *report and recommendation adopted*, 2021 U.S. Dist. LEXIS 101560 (S.D.N.Y. 2021) ("[A]s recognized by courts in this Circuit, there is something particularly reprehensible about a law enforcement officer assaulting an inmate under his care."); *Mathie v. Fries*, 121 F.3d 808, 815, 816-17 (2d Cir. 1997)

(finding that the prison official's "abuse of an inmate in his custody was reprehensible in the extreme" and "an outrageous abuse of power and authority"); *DiSorbo v. Hoy*, 343 F.3d 172, 188 (2d Cir. 2003) ("Police brutality cannot be tolerated in our society, and punitive damages awards serve a critical role in deterring such misconduct"); *Jackson v. Tellado*, 2018 U.S. Dist. LEXIS 145339, at *27-28 (E.D.N.Y. 2018) (noting the "violent and malicious assault" was "wholly improper behavior for law enforcement officers"); *Noonan v. Becker*, 2018 U.S. Dist. LEXIS 60704, at *20 (S.D.N.Y. 2018) (finding police officer's assault of someone he arrested to be "egregious misconduct, in breach of the public trust"); *see also Lewis v. City of Albany Police Dep't*, 547 F. Supp. 2d 191, 209 (N.D.N.Y. 2008), *aff'd* 332 F. App'x 641 (2d Cir. 2009) (summary order) (sustaining jury's punitive damages award in suit against officer for using excessive force in arresting plaintiff, noting "it is particularly important to further the goal of deterring defendants such as [officer-defendant] from participating in violations of constitutional rights given their positions of public trust, as defendant points out, with the socially beneficial goal of preventing criminal activity.").

## C.     Repeated Instances of Misconduct

Defendants argue that the assault was the only interaction between plaintiff and defendants during which defendants' conduct could conceivably be considered reprehensible. However, since "[t]he evidence supporting the first two factors, even without the third, is sufficient to establish a high degree of reprehensibility" to recover punitive damages, *Alla v. Verkay*, 979 F. Supp. 2d 349, 374 (E.D.N.Y. 2013),

plaintiff is not required to prove that defendants had previously engaged in violent conduct. This is not to suggest that defendants did not *subsequently* engage in misconduct that is worthy of consideration for the purposes of punitive damages. *See* discussion *infra* at Section IV.

## II. The ratio between compensatory and punitive damages is not excessive, and other courts have sustained similar awards.

"As a general rule, punitive damages are within the jury's discretion and will not be disturbed unless they are grossly excessive." *Queenie, Ltd. v. Nygard Int'l*, 204 F. Supp. 2d 601, 604 (S.D.N.Y. 2002) (citing *Roy Export Co. Establishment of Vaduz, Liechtenstein v. Columbia Broad. Sys., Inc.*, 672 F.2d 1095, 1106 (2d Cir. 1982)). Moreover, an "award of punitive damages is reversed only when it is so high as to shock the judicial conscience and constitute a denial of justice." *Hughes v. Patrolmen's Benev. Ass'n of City of New York, Inc.*, 850 F.2d 876, 883 (2d Cir. 1988). Finally, as acknowledged by defendants, *see* Defendants' Motion, at p. 4, "when the argument for remittitur is that the award is 'intrinsically excessive,' but the excess is 'not attributable to a discernable error,' the Court may 'reduce the award only to the maximum amount that would be upheld . . . as not excessive.'" *Tatum v. City of New York*, 668 F. Supp. 2d 584, 602 (S.D.N.Y. 2009) (quoting *Rangolan v. County of Nassau*, 370 F.3d 239, 244 (2d Cir. 2004)).

### A. Ratio

Here, the ratio of punitive damages to compensatory damages is not excessive. There is "no formula by which the finder of fact must determine punitive

damages." *Wright*, 887 F.3d at 588 (citation omitted). The Supreme Court therefore "ha[s] consistently rejected the notion that the constitutional line is marked by a simple mathematical formula." *Gore*, 517 U.S. at 582. In *Payne v. Jones*, 711 F.3d 85 (2d Cir. 2013), the Second Circuit noted that the Court in *Gore* "repeatedly stressed the impossibility of making any bright-line test, as the propriety of the ratio can vary enormously with the particular facts of the case," 711 F.3d at 102 (citing 517 U.S. at 582-83), and that "[i]t is difficult or impossible to make useful generalizations." *Id.* By itself, the ratio does not determine whether the punitive damages are excessive; the court must consider the context of the case. *See Payne*, 711 F.3d at 103 (noting that, for example, in certain instances, a 10-to-1 ratio might be permissible). Relatedly, "[w]hen the compensable injury was small but the reprehensibility of the defendant's conduct was great, the ratio of a reasonable punitive award to the small compensatory award will necessarily be very high." *Id.* at 102; *see Thomas v. Kelly*, 903 F. Supp. 2d 237, 266 (S.D.N.Y. 2012) ("[T]he Second Circuit [in *Payne*] found that the second and third guideposts 'tell us little that is useful about the size of the award.' Rather, the court found that the first guidepost—the degree of reprehensibility of the defendant's conduct—to be the most helpful and important.").

In *Gore*, the Court noted that it had approved a 10:1 ratio in a prior case. *See* 517 U.S. at 581. In this case, the resulting ratios between $350,000, $350,000, and $250,000 in punitive damages and $50,000 in compensatory damages are, respectively, 7:1, 7:1, and 5:1. Moreover, comparing each punitive damages award to

the total award for compensatory damages, as opposed to each defendant's *pro rata* share, is the approach that was taken by the Southern District of New York in *Bouveng v. Nyg Capital LLC*, 175 F. Supp. 3d 280, 347 (S.D.N.Y. 2016).

Plaintiff acknowledges that the Eighth Circuit in *Grabinski v. Blue Springs Ford Sales, Inc.*, 203 F.3d 1024 (8th Cir. 2000), *cert. denied*, 531 U.S. 825 (2000) calculated the relevant ratios by comparing the individual punitive damages awards to each defendants' *pro rata* share of the compensatory damages award. However, the court did so only because, in the court's reasoning, comparing each individual punitive damages award to the entire compensatory damages award "assumes an impossibility,…because it posits that each defendant will ultimately pay the full compensatory damages award" as opposed to the "amount of actual damages payable by that defendant." *Grabinski*, 203 F.3d at 1026. Here, however, since each defendant will all but certainly be indemnified by the State as to the compensatory damages award,[4] there will be no "amount of actual damages *payable by that defendant.*" Accordingly, the reasoning behind *Grabinski* should be deemed

---

[4] *See* N.Y. Pub. Off. Law § 17 ("The state shall indemnify and save harmless its employees in the amount of any judgment obtained against such employees in any state or federal court, or in the amount of any settlement of a claim, or shall pay such judgment or settlement…"). In *Grabinski*, which did not involve defendants who were public employees, there was no indication that any of the defendants would be indemnified by any third party for their proportionate share of the compensatory damages award.

inapplicable to this case.[5]

Regardless of which method is employed to calculate the ratio of punitive damages to compensatory damages, the ratio here is not impermissibly high. In that regard, it is worth noting that in *Grabinski*, where the court affirmed the punitive damages awards in their entirety, calculating those awards based on the total compensatory damages award yielded a 27 to 1 ratio, while calculating the awards based on a *pro rata* compensatory damages award—which was the formula approved by the court—yielded a ratio of 99 to 1 against one of the defendants. Both of those ratios are higher than the ratios in this case, no matter how the rations herein are calculated. And while the court in *Grabinski* characterized the awards as "generous," *id.* at p. 1028, it did not deem them to be excessive.

Here, the jury knew what it was doing, assigning different awards based on the defendants' misconduct, allocating the highest amounts for C.O.s Peralta and Bailey, who set plaintiff up for the assault and violently punched and kicked him multiple times, and the lower amount for Blount, who did not participate in the assault, but stood by and took no steps to intervene. While the jury did not award plaintiff a six-figure compensatory award, it recognized that defendants' behavior was outrageous, awarding punitive damages accordingly.

---

[5] While the court in *Alla*, 979 F. Supp. 2d 349, which was decided before *Bouveng v. Nyg Capital LLC*, cited *Grabinski* in following the formula that uses the defendants' *pro rata* shares of the compensatory damages award in calculating the ratio, it did so without addressing whether any of the defendants would actually be paying these awards from their own pockets.

**B.      Similar Cases**

The punitive damages are also not excessive, or unacceptably disproportionate to the compensatory damages award, when compared with other cases. Here, the awards range from $250,000 to $350,000, which falls within the range of other law enforcement officer brutality cases. *See Jackson*, 2018 U.S. Dist. LEXIS 145339, at *25 (collecting police misconduct cases ranging in punitive damages from $157,603.29 to $379,131,68, adjusting for inflation, and further assessing the various awards individually instead of the higher composite number); *Lewis*, 547 F. Supp. 2d at 210 ("this jury's $200,000 award of punitive damages is not so grossly excessive as to shock the judicial conscience") (citations omitted); *Greenaway v. County of Nassau*, 327 F. Supp. 3d 552, 571 (E.D.N.Y. 2018) (upholding the jury's award of $100,000 per officer and citing cases affirming awards of $278,000, $200,000, and other six-figure amounts, after adjusting for inflation); *Denman v. Sanders*, 2006 U.S. Dist. LEXIS 7612, at *8 (S.D.N.Y. 2006) (small remittitur of punitive damages award to $267,000, adjusting for inflation, with $50,000 in compensatory damages awarded to plaintiff punched in head by *non-law-enforcement-officer* customer at a store, resulting in bleeding) (emphasis added); *Thomas*, 903 F. Supp. 2d at 244, 270 (S.D.N.Y. 2012) (small remittitur of award of punitive damages to $325,000 in § 1983 case where jury awarded plaintiff $125,000 in compensatory damages, finding remainder of defendants liable for using excessive force but awarding plaintiff no compensatory damages and $1 in nominal damages.); *Kennedy v. Supreme Forest Prods.*, 761 F. App'x 72, 74, 77 (2d Cir. 2019) (summary order) (small remittitur of punitive damages award to

$250,000 where jury awarded plaintiff $11,900 in compensatory damages); *see also Blackledge v. Carlone*, 126 F. Supp. 2d 224, 225, 228-31 (D. Conn. 2001) (upholding $40,000 punitive award where compensatory award was $1,000 and officer pepper sprayed plaintiff, handcuffed plaintiff behind her back and placed her in back of police cruiser, then sprayed her again.).

This case is remarkably similar to *Anderson v. Osborne*, 2020 U.S. Dist. LEXIS 194371 (S.D.N.Y. 2020), wherein the plaintiff, a state prisoner, was assaulted by a group of officers in retaliation for refusing to discuss with a sergeant a statement that the plaintiff made to the Office of Special Investigations; there, too, the officers completely denied the allegations and claimed that the plaintiff was the aggressor. Following trial, the jury found for the plaintiff and awarded $75,000 in compensatory damages and $575,000 in punitive damages. Defendants' subsequent motion for a new trial or remittitur of damages was denied in its entirety. In his decision, Judge Briccetti observed,

> Clearly, the jury concluded plaintiff was punched, stomped, and beaten without provocation. Furthermore, in crediting plaintiff's version of events, the jury plainly discredited the defendants' testimony and other record evidence, and concluded defendants lied to cover up their use of unprovoked, excessive force against plaintiff, an inmate in their charge.
>
> The jury's varying punitive damages awards against each defendant further demonstrates the jury's careful discrimination as to the evidence, and that the jury separately weighed each defendant's conduct in view of his individual culpability….[T]he propriety of the ratio can vary enormously with the particular facts of the case.

> Indeed, in cases of very small injury but very reprehensible conduct, the appropriate ratios can be very high.

*Id.*, at \*22-23 (internal quotation marks and citation omitted). So too here. The jury discredited defendants' denials, credited plaintiff's account, and carefully assessed their punitive damages awards based on "the extreme reprehensibility of defendants' conduct." *Id.* In light of the punitive damages awards sustained in similar cases, the $350,000, $350,000, and $250,000 awards granted by the jury against defendants Peralta, Bailey, and Blount, respectively, are appropriate and within constitutional boundaries.

## III.    Civil and Criminal Penalties

The third indicium for evaluating excessiveness calls for comparing the punitive damages award to the civil or criminal penalties that could be imposed for comparable misconduct. *See Gore*, 517 U.S. at 583. "[A] reviewing court engaged in determining whether an award of punitive damages is excessive should accord substantial deference to legislative judgments concerning appropriate sanctions for the conduct at issue." *Id.* (internal quotation marks omitted).

The punitive damages awards against defendants herein are reasonable in light of the monetary and other severe penalties prescribed by federal and state law for similar misconduct. *See, e.g.*, 18 U.S.C. § 242 and 18 U.S.C. § 3571 (collectively authorizing a fine for a criminal violation of civil rights of up to $250,000 if committed by an individual, and up to $500,000 if committed by an organization); *see also* N.Y. Penal Law § 120.07 (gang assault in the first degree is a class B

felony, punishable by a fine of not more than $5,000 and a prison sentence of

between 5 and 25 years). When examining punitive damages awards, courts in this

circuit have found penalties imposed under federal criminal law statutes for similar

offenses to be a better analytic tool than state penalties because they better reflect

the qualitative difference when the offense in question is an abuse of authority and

because fines associated with state offenses do not provide a useful benchmark for

evaluating punitive damages awards assessed against law enforcement officers. *See*

*Anderson v. Aparico*, 25 F. Supp. 3d 303 (E.D.N.Y. 2014), *aff'd sub nom. Anderson v.*

*County of Suffolk*, 621 F. App'x 54 (summary order) (2d Cir. 2015). Thus, "[w]here a

jury imposes punitive damages for a violation of § 1983, the penalties imposed

under federal criminal law for a similar offense provide an excellent metric for

evaluation of excessiveness." *Id.* at 312 (emphasis added) (finding that under 18

U.S.C. § 242, defendants had "constructive notice that use of excessive force could,

under certain conditions, lead to a fine of up to $250,000."); *see also Dixon v. Agbai*,

2016 U.S. Dist. LEXIS 88844, at *27 (S.D.N.Y. 2016), *report and recommendation*

*adopted*, 2016 U.S. Dist. LEXIS 134490 (S.D.N.Y. 2016) (finding that the criminal

penalties associated with a New York class D felony "would have given [the

defendant] fair notice that his conduct could subject him to a [$150,000] punitive

damages award.") Accordingly, since the $350,000, $350,000, and $250,000 punitive

damages awards against defendants Peralta, Bailey, and Blount, respectively, are

within the range of the penalties authorized for felonies under federal law, there are

no concerns here that the "tortfeasor lacked 'fair notice' that the wrongful conduct could entail a substantial punitive award." *Lee*, 101 F.3d at 811.

## IV. Additional factors ancillary to *Gore* support the punitive damages award

"A jury's assessment of the extent of a plaintiff's injury is essentially a factual determination, whereas its imposition of punitive damages is an expression of its moral condemnation." *Cooper Indus. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 432 (2001). As this Court noted, the jury in this case was clearly disturbed by the defendants' conduct. *See* Transcript, at 623:14-21. It is not a stretch to characterize their punitive damages awards as an expression of their moral and ethical condemnation of defendants. That, combined with the public interest undergirding the purpose of punitive damages, especially in cases involving law enforcement, weighs against a reduction in the punitive damages award.

The inquiry also need not end with the jury's presumptive finding that the defendants acted reprehensibly within the original meaning of *Gore*, because *Gore's* progeny has expanded the meaning of reprehensibility beyond violence, callousness, and deceit. For example, given defendants' denial that the assault ever occurred, a finding for plaintiff inexorably leads to the conclusion that the jury found that defendants effectively perjured themselves. Currently, there is no consensus as to whether or not this may be relevant to the propriety of a given punitive damages award. *Compare, e.g.*, *Duarte v. St. Barnabas Hosp.*, 341 F. Supp.3d 306, 330 n.14 (S.D.N.Y. 2018) (doubting that New York law permitted the jury to consider the

perjurious testimony of a manager in determining whether to award punitive damages), *with Theodat v. City of New York*, 2019 U.S. Dist. LEXIS 157274, at *20 (E.D.N.Y. 2019), *aff'd on other grounds*, 2020 U.S. App. LEXIS 20840 (2d Cir. 2020) (noting in discussion of reprehensible conduct, "the jury necessarily found that [defendant] lied about [plaintiff]'s arrest, and the evidence supports a finding that [defendant] was lying when he testified that he did not remember the events of that night."). Nonetheless, that defendants committed perjury underscores the malicious and deceitful nature of their conduct, which *is* a factor that the jury can consider in awarding punitive damages.

Other aspects of defendants' comportment during trial, including the use of a profanity towards plaintiff from the witness stand, *see* Transcript, at 467:16-468:3, 477:22-488:19, and snickering and laughing during proceedings, *see id.* at 564:4-16, also demonstrate a complete lack of remorse and reinforce the propriety of the jury's punitive damages awards. *See, e.g.*, *United States v. Hylton*, 590 F. App'x 13, 19 (2d Cir. 2014) (summary order) (noting that an award of punitive damages was appropriate where the defendant "showed no remorse for his conduct," but rather, "continued to make discriminatory comments to the….investigator pursuing" the plaintiff's claims) (citation omitted); *Launders v. Steinberg*, 39 A.D.3d 57, 72 (1st Dep't 2007) (defendant's "total lack of remorse" and the "heinous nature of his assault and battery" were factors relevant to the amount of punitive damages award); *see also Kolstad v. ADA*, 527 U.S. 526, 536 (1999) (calling an "*indifference to civil obligations*" an example of reprehensible conduct meriting an award of

punitive damages) (emphasis added) (internal quotation marks and citation omitted); *Francis v. City of New York*, 2019 U.S. Dist. LEXIS 197034, at *18-19 (S.D.N.Y. 2019) (noting that "an award of punitive damages is appropriate" if there is evidence "that the defendant actually derive[d] satisfaction from hurting the plaintiff…") (citing *Smith v. Wade*, 461 U.S. 30 (1983)) (emphasis added) (alteration in original).

Finally, in gauging excessiveness, courts "must keep in mind the purpose of punitive damages: to punish the defendant and to deter him and others from similar conduct in the future." *Lee*, 101 F.3d at 809. The task is "to determine what amount would be sufficient to punish that particular defendant and deter 'others of similar mind.'" *Wright*, 887 F.3d at 588 (quoting *Rupert v. Sellers*, 48 A.D.2d 265 (4th Dep't 1975)). Here, where the compensatory damages award was relatively modest in comparison to the nature of the injury sustained by plaintiff, where that award almost certainly will be paid by the State, and not by the defendants, and where the underlying act is one that often will go undetected in a correctional facility, a very significant award of punitive damages is necessary to deter the defendants from engaging in similar conduct in the future. *See, e.g., Ciraolo v. City of New York*, 216 F.3d 236, 245 (2d Cir. 2000) (Calabresi, J., concurring) (noting that "the Supreme Court…[has] acknowledged that in determining such punitive damages, it is proper to consider the extent to which the tortfeasor might otherwise escape liability."), *citing Gore*, 517 U.S. at 582; *Kemezy v. Peters*, 79 F.3d 33, 35 (7th Cir. 1996) (Posner, J.) (pointing out that, in order to avoid an award that does

not "underdeter," a significant award of punitive damages may be particularly appropriate when the compensatory damages award is relatively modest, or when the tortious act is one that the defendant might ordinarily be able to perpetrate without detection).

## CONCLUSION

For the foregoing reasons, plaintiff respectfully requests that defendants' motion be denied in its entirety, and that the Court sustain the jury's verdict and award of $350,000, $350,000, and $250,000 in punitive damages against defendants Peralta, Bailey, and Blount, respectively.

Dated: New York, New York
     July 12, 2021

Sivin, Miller & Roche LLP

s/ Edward Sivin
Edward Sivin
Attorneys for Plaintiff
20 Vesey Street, Suite 1400
New York, NY 10007
Telephone: (212) 349-0300
E-mail: esivin@sivinandmiller.com
