**MANDATE**

22-519-pr (L)
*Magalios v. C.O. Mathew Peralta et al.*

7:19-cv-06188-CS

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Aug 09 2023

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of July, two thousand twenty-three.

PRESENT:

      DENNY CHIN,
      SUSAN L. CARNEY,
      EUNICE C. LEE,

      *Circuit Judges.*

-----------------------------------------------------------------

NICHOLAS MAGALIOS,

    *Plaintiff-Appellee-Cross-Appellant,*

    v.                                      Nos. 22-519-pr (L)
                                                      22-541-pr (XAP)

C.O. MATHEW PERALTA, C.O. TIMOTHY BAILEY, C.O. EDWARD BLOUNT,

    *Defendants-Appellants-Cross-Appellees.*

-----------------------------------------------------------------

**MANDATE ISSUED ON 08/09/2023**

| | |
|---|---|
| For Plaintiff-Appellee-Cross-Appellant: | EDWARD SIVIN (Clyde Rastetter, on the brief), Sivin, Miller & Roche, LLP, New York, NY. |
| For Defendants-Appellants-Cross-Appellees: | HENRY M. GREENBERG, Greenberg Traurig, LLP, Albany, NY. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Seibel, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Corrections Officers ("COs") Mathew Peralta, Timothy Bailey, and Edward Blount ("Defendants") appeal from a final judgment of the district court entered following a jury trial at which they were found liable for use of excessive force and failure to intervene in violation of plaintiff Nicholas Magalios's Eighth Amendment rights. The suit, brought pursuant to 42 U.S.C. § 1983, alleged that Magalios, while incarcerated by the New York State Department of Corrections and Community Supervision ("DOCCS") at Fishkill Correctional Facility, was physically attacked by Defendants Peralta and Bailey while Defendant Blount stood by and watched.

Magalios testified at trial that during a prison visit with his then-wife Lisa Tibaldi, a non-defendant CO, along with Defendant Peralta, verbally harassed Magalios. Due to the tension with the COs, Magalios decided to end the visit with his wife earlier than usual. Once the visit ended, Magalios proceeded to the frisk area where Defendant Peralta and Bailey violently assaulted him while Defendant Blount watched. Following trial, the jury awarded Magalios $950,000 in punitive damages, an award the district court found excessive and remitted to $500,000.

On appeal, Defendants argue that the district court committed a variety of errors at trial. Magalios cross-appeals, arguing that the district court abused its discretion in remitting the jury's punitive damages award. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

A. <u>Pre-trial Evidentiary Rulings</u>

Defendants challenge two of the district court's pre-trial evidentiary rulings: (1) the exclusion of Magalios's prior felony conviction for promoting prison contraband; and (2) the exclusion of the nature of witness and former inmate Alexander Hall's conviction for manslaughter. We review the evidentiary rulings for an abuse of discretion, *United States v. Ho*, 984 F.3d 191, 207 (2d Cir. 2020), and find none.

While Federal Rule of Evidence 609 creates a presumption that felony convictions committed within the past ten years are admissible as impeachment evidence in civil cases, the admissibility of such convictions is still subject to a Rule 403 analysis. *See* Fed. R. Evid. 609(a)(1)(A). Here, it was reasonable for the court to conclude that admission of Magalios's conviction for promoting prison contraband would risk confusing the jury because of the possible suggestion that it was known to Defendants and thus motivated the assault. Furthermore, because the court admitted Magalios's other felony convictions, the value of the prison contraband conviction for impeachment purposes was diminished. *See United States v. Washington*, 746 F.2d 104, 107 (2d Cir. 1984) (Newman, *J.*, concurring) ("Once credibility is impeached by a prior felony conviction, the incremental probative force of a second conviction is minimal."). Likewise, it was reasonable for the court to conclude that the prejudicial impact of informing the jury that Hall had been convicted for causing someone's death was likely high and the impeachment value of the

nature of the conviction low.[1] *See United States v. Estrada*, 430 F.3d 606, 617 (2d Cir. 2005) ("District courts, in applying Rule 609(a)(1), are thus required to examine which of a witness's crimes have elements relevant to veracity and honesty and which do not."). Defendants' arguments to the contrary are unpersuasive because they amount to nothing more than disagreements with the court's exercise of discretion. This is not enough. *See Ho*, 984 F.3d at 207 ("To find such an abuse we must be persuaded that the trial judge ruled in an arbitrary and irrational fashion." (internal quotation marks omitted)).

      B.      <u>Challenges Regarding Witness Testimony at Trial</u>

Defendants bring various challenges to events regarding witness testimony. We address each challenge in turn and find none meritorious.

           1.      *Fifth Amendment Warning to Lisa Tibaldi*

First, Defendants challenge the district court's decision to inform defense witness Lisa Tibaldi of her Fifth Amendment rights.[2] The district court issued the warning after learning that Tibaldi, Magalios's ex-wife, was planning to recant her deposition testimony that Magalios had called her following their prison visit and told her he had been assaulted by Defendants. At trial, however, the defense expected her to testify that her deposition testimony had been false and that Magalios was fabricating his allegations. The district court observed that "it sound[ed] like" Tibaldi was "going to admit to perjury," and determined that it was inclined to "alert her" of that risk "outside the presence of the jury." Joint App'x at 565. While the court explained that it did not "want to discourage [Tibaldi] from testifying . . . if she's going to incriminate herself, she

---

[1] Though the exact nature of the conviction was not admissible, the district court noted that defense counsel could ask whether Hall "was serving a five- to fifteen-year sentence for a felony," which would "show [the] serious[ness]" of the conviction. Joint App'x at 138.

[2] Though Magalios had initially planned to call Tibaldi as a witness, her increasing hostility toward Magalios led counsel to strike her from the witness list.

4

needs to know that she's going to incriminate herself and that she has a right to consult with counsel before she does that." *Id.* The court then issued the following warning to Tibaldi:

> you need to be aware that falsely testifying under oath is a crime for which you could, in theory, be prosecuted, and that, under the Fifth Amendment, you have a right to refuse to testify if your testimony would tend to incriminate you. And . . . [i]t is a good idea to consult with a lawyer before you testify to something that would incriminate you.
>
> I'm not suggesting that any prosecutor would have any interest in your case or that any prosecutor would prosecute you for lying under oath, but you need to be informed that it is a possibility. . . . And I encourage you to consult with counsel before you testify on that subject.

*Id.* at 571–72. When it came time for Tibaldi to take the stand, defense counsel informed the court that Tibaldi was no longer willing to testify because "[s]he is scared for her safety." *Id.* at 606.

Defendants now argue, for the first time, that the district court erred by advising Tibaldi of her Fifth Amendment right because she had already waived this right via her deposition testimony. Alternatively, they claim that, even if she did not waive the right, the warning improperly discouraged Tibaldi from testifying. Neither argument is convincing, and we find no plain error in the district court's advising Tibaldi of her Fifth Amendment right. *See Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 18 (2d Cir. 1996) (noting that "[w]e ordinarily do not consider claims of error that were not properly raised at trial unless the error is plain" and warning that "the plain error exception should only be invoked with extreme caution in the civil context" (internal quotation marks omitted)).

Tibaldi did not waive her Fifth Amendment right by testifying at her deposition because her risk of self-incrimination did not arise from the subject of her deposition testimony but rather from the proposed *new* trial testimony that her deposition testimony had been a lie. *Cf. Mitchell v. United States*, 526 U.S. 314, 321 (1999) (explaining that a witness may not "testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about

5

1   details"). Simply put, Tibaldi could not have waived her Fifth Amendment privilege as to the
2   expected testimony at trial that she perjured herself at her deposition because she had never
3   testified to that effect before. *See In re Corrugated Container Antitrust Litig.*, 644 F.2d 70, 75 n.7
4   (2d Cir. 1981) (collecting cases for the proposition that a "witness is entitled to claim the Fifth
5   Amendment privilege if it might reveal perjury in a *prior* proceeding" (emphasis added)).

6   As to the district court's warning itself, Defendants have failed to demonstrate any error,
7   let alone plain error. The district court acted well within its discretion in issuing a well-balanced
8   warning, which made clear that the while the court believed it was unlikely that Tibaldi would be
9   prosecuted, her proposed testimony raised the risk of self-incrimination. *See United States v.*
10  *Valdez*, 16 F.3d 1324, 1331 (2d Cir. 1994) ("[A] district court certainly has the discretion to ensure
11  that a witness in danger of unwittingly incriminating h[er]self is aware of h[er] constitutional
12  privilege, but that exercise of this discretion must be carefully tailored to ensure that warnings do
13  not become threats."). What is more, the record itself confirms that the district court's warning
14  did not chill Tibaldi's choice to testify: Per defense counsel's own explanation at trial, Tibaldi
15  aborted her testimony out of concern for her safety, not out of a fear of self-incrimination. As
16  such, even assuming *arguendo* an error in the district court's warning, any such error was not
17  prejudicial because it does not appear to have precipitated Tibaldi's choice to abort her testimony.

18          2.      *Testimony of Nicholas Giannini*

19  Second, Defendants challenge the district court's decision to permit Nicholas Giannini, a
20  witness for Magalios, to testify to a threat he received from Tibaldi and her boyfriend Justin
21  Zamani. After being informed by Magalios's counsel that Giannini had been threatened, the
22  district court stated that it believed that it was "fair game" for Magalios's counsel to ask Giannini
23  about the threat during his testimony, Joint App'x at 567, given its relevance as to Tibaldi's bias

as a witness.[3] Accordingly, Giannini testified on direct examination that he was nervous, because Tibaldi and Zamani had approached him in the courthouse hallways and threatened his life. Defense counsel did not object to Giannini's testimony—neither during the court's discussion with counsel prior to Giannini taking the stand nor during Giannini's testimony itself.

Because the district court admitted Giannini's testimony regarding the threat in expectation of Tibaldi testifying, the court, after learning that Tibaldi would not in fact testify, informed counsel that it was inclined to strike Giannini's testimony regarding the threat. Magalios's counsel suggested that Giannini's testimony as to the threat remained admissible to explain his apparent nervousness. In response, the court suggested that it could tell the jury that the threat testimony was to be considered only to explain Giannini's demeanor and asked the parties if this "seem[ed] fair." *Id.* at 607. Magalios's counsel agreed it did, and defense counsel thanked the court.

In line with the plan discussed with counsel, the district court later issued a curative instruction to the jury explaining that it had admitted Giannini's testimony in "expectation that the ex-wife [Tibaldi] was going to testify." *Id.* at 609. Because Tibaldi ultimately did not testify, the district court instructed the jury "to use [Giannini's] testimony [about the threat] only for a very limited purpose, which is for whatever effect it might have had on the witness' state of mind." *Id.* at 610. The district court additionally explained to the jury that "the individual who's alleged to have made the threat is not associated with any of the parties. He's not associated with the defendants. He's not associated with the plaintiff. So any misconduct by such a person should not affect your views of any of the parties either way . . . ." *Id.*

Despite not objecting below, Defendants now argue that the district court plainly erred by admitting Giannini's testimony regarding the threat because evidence of threats is inadmissible if

---

[3] The district court ruled that Giannini could testify to the threat after learning that Tibaldi might perjure herself, but before issuing its Fifth Amendment warning and before learning that Tibaldi had decided not to testify at trial.

7

the threat was not made in connection with a party to the litigation. Defendants do not point to any apposite authority for their proposed bright-line rule. To the contrary, while recognizing that "the potential prejudice from death threats may be great," we have stated that such evidence is to be judged "just as other potentially prejudicial evidence . . . by the normal processes of Fed. R. Evid. 403 balancing." *United States v. Qamar*, 671 F.2d 732, 736 (2d Cir. 1982) (internal quotation marks omitted). And we have previously approved of the use of death-threat evidence, as it was used here, to aid the jury in assessing a witness's demeanor or state of mind. *Id.*

Accordingly, the district court did not plainly err when it admitted the threat testimony. Though evidence of third-party threats poses a heightened risk of prejudice, the court's limiting instruction to the jury clearly explained both that the testimony of the threat was only relevant to assessing Giannini's demeanor and that the threat was in no way connected to Defendants. *See United States v. Colombo*, 909 F.2d 711, 715 (2d Cir. 1990) (noting that "ordinarily we presume that a jury adheres to the curative instructions of the trial court"). Under these circumstances, we cannot conclude that admitting the threat testimony was so highly prejudicial as to go to the "very integrity of the trial." *Pescatore*, 97 F.3d at 18 (internal quotation marks omitted).

### 3. Testimony of Reuben Febus

Defendants urge us to find that the district court abused its discretion in excluding Office of Special Investigation Investigator Reuben Febus's testimony regarding DOCCS's internal investigation to the extent that the testimony spoke to Febus's opinion regarding the likelihood that the assault happened. Lay witnesses may testify in the form of an opinion only when that testimony is "helpful to clearly understanding the witness's testimony or to determining a fact in issue." Fed. R. Evid. 701(b). "This helpfulness requirement is designed to provide assurance against the admission of opinions which would merely tell the jury what result to reach." *Cameron*

*v. City of New York*, 598 F.3d 50, 62 (2d Cir. 2010) (internal quotation marks omitted and alteration adopted). It was therefore reasonable for the district court to find that Febus's testimony regarding the credibility of Magalios's allegations would amount to telling the factfinders what result to reach and risk prejudicing the jury. *See United States v. Awadallah*, 436 F.3d 125, 133 (2d Cir. 2006) (holding that it was within trial court's discretion to exclude evidence where the "danger of prejudice [was] heightened . . . because the proposed testimony [went] to an ultimate issue in the case" (internal quotation marks omitted)).

    C.    <u>Denial of Motion for Mistrial Following Note from Juror 3</u>

Defendants also appeal the district court's denial of their motion for mistrial following a note from Juror 3—received after Giannini's threat testimony but before the district court issued the curative instruction regarding that testimony—indicating that the juror had security concerns. The court denied the motion but indicated that it would voir dire Juror 3 individually at the request of either party following its issuance of the curative instruction to the jury. Ultimately, the district court voir dired Juror 3 regarding his note. Asked if he could still be impartial, Juror 3 responded that his concerns were only about safety and that he could "still be absolutely fair . . . I'm not concerned about my fairness quotient" and that he was "devoted to the evidence and the facts." Joint App'x at 660–61. Satisfied that Juror 3 had not been biased by Giannini's testimony, the court kept Juror 3 on the panel.

Defendants claim that the district court abused its discretion in declining to dismiss Juror 3 following receipt of the note. We disagree. *See United States v. Rubin*, 37 F.3d 49, 54 (2d Cir. 1994) ("The process of empaneling a jury is firmly entrusted to the sound discretion of the trial judge and will not be disturbed absent an abuse of this discretion."). The district court engaged in a substantial voir dire of Juror 3 in which Juror 3 made clear that he was still committed to the

evidence and believed he could be impartial. The court's choice to credit Juror 3's self-reporting as to his bias is entitled to "special respect," *United States v. Grasso*, 600 F.2d 342, 343 (2d Cir. 1979) (citation omitted), and its choice to keep him empaneled did not exceed the bounds of the "broad flexibility" trial courts are accorded in addressing the "delicate and complex task" of managing jurors, *United States v. Farhane*, 634 F.3d 127, 168 (2d Cir. 2011) (internal quotation marks omitted).

D. <u>Remittitur</u>

For his part, Magalios argues on cross-appeal that the district court abused its discretion by remitting the $950,000 punitive damages award.[4] We disagree. *Payne v. Jones*, 711 F.3d 85, 100 (2d Cir. 2013) (explaining that where, as here, a challenge to punitive damages is not made on constitutional grounds but rather for "mere excessiveness," we review the district court's remittitur ruling for abuse of discretion). The district court's remittitur analysis was properly guided by the three factors announced in *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), or the "*Gore* factors." Those factors are (1) the "degree of reprehensibility" of the defendants' conduct; (2) the "disparity between the harm . . . and the punitive damages award"; and (3) "the difference between the remedy and the civil penalties authorized or imposed in comparable cases." *DiSorbo v. Hoy*, 343 F.3d 172, 186 (2d Cir. 2003) (citing *Gore*, 517 U.S. at 574–75). Applying the *Gore* factors to the case, the district court determined that the high degree of reprehensibility militated in favor of substantial punitive damages but that the total compensatory-to-punitive-damage ratio, which amounted to 7:1 for Defendants Peralta and Bailey and 5:1 for Defendant Blount, indicated that the award was excessive, as did the maximum fine from the comparable criminal provision and civil penalties from comparable civil cases.

---

[4] The $950,000 total award reflected $350,000 as against Defendants Peralta and Bailey and $250,000 against Defendant Blount. The jury also awarded $50,000 in compensatory damages.

10

Contrary to Magalios's assertion, the district court did not unduly discount the first factor (reprehensibility) at expense of the second (disparity between harm and award). It was not contradictory for the district court to determine that though substantial punitive damages were warranted by the first factor, the second factor indicated that those awarded by the jury were excessive. In so determining, it was reasonable for the district court to consider the comparable criminal penalty of $250,000 and factually similar civil cases that had resulted in lesser damages awards. *See Jennings v. Yurkiw*, 18 F.4th 383, 393 (2d Cir. 2021); *Payne*, 711 F.3d at 104. Further, the court engaged in a well-considered analysis of the ratio of compensatory to punitive damages and did not operate in a bright-line fashion, as we have warned against. *See Payne*, 711 F.3d at 102 (noting that the Supreme Court has "repeatedly stressed the impossibility of making any bright-line test" as to damages ratios). Moreover, its conclusion that the large disparity between the harm and punitive damages award indicated that the jury's award was excessive was reasonable. *See id.* (noting that ratios may "necessarily be very high" in cases where reprehensibility of the defendant's conduct is great but, unlike this one, the "compensable injury [is] small"); *Thomas v. iStar Fin., Inc.*, 652 F.3d 141, 149 (2d Cir. 2011) (noting that "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety" (internal quotation marks omitted)).

\*   \*   \*

We have considered the remainder of the parties' arguments and find them without merit. For the above reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

11