UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
NICHOLAS MAGALIOS,

                                        Plaintiff,

          - against -

C.O. MATHEW PERALTA,
C.O. TIMOTHY BAILEY, and
C.O. EDWARD BLOUNT,

                                        Defendants.
------------------------------------------------------------x

**OPINION & ORDER**

No. 19-CV-6188 (CS)

<u>Appearances</u>:

Edward Sivin
Sivin & Miller, LLP
New York, New York
*Counsel for Plaintiff*

Henry M. Greenberg
Julie A. Yedowitz
Greenberg Traurig, LLP
Albany, New York
*Counsel for Defendants*

<u>Seibel, J.</u>

          Before the Court is Plaintiff's motion for attorneys' fees totaling $499,309[1] and costs

totaling $6,764.85.  (ECF No. 81; *see* ECF No. 84.)  For the reasons discussed below, Plaintiff's

motion is GRANTED to the extent that the Court awards $379,192.14 in fees and $6,764.85 in

costs.

---

[1] Plaintiff's opening memorandum indicates that he is seeking $495,015 in attorneys' fees, (*see* ECF No. 81-18 at 1, 12), while his reply memorandum indicates that he is seeking $459,892.20, (*see* ECF No. 84-4 ("P's Reply") at 11).  Plaintiff does not explain this discrepancy.  The Court considers the requested fees to be $495,015 as noted in the opening memorandum and as reflected in the supporting documentation, plus the $4,294 in additional fees for the reply memorandum.

I.    **BACKGROUND**

I assume the parties' familiarity with the factual and procedural background of the case.

Plaintiff Nicholas Magalios brought this action pursuant to 42 U.S.C. § 1983, alleging that on

September 3, 2017, while he was a prisoner at the Fishkill Correctional Facility, he was the

subject of excessive force, in that he was beaten without provocation by corrections officers,

including Defendants C.O. Mathew Peralta and C.O. Timothy Bailey.  (ECF No. 1 ¶¶ 2, 13, 15.)

He further asserted that Defendants Peralta, Bailey, and C.O. Edward Blount observed the

actions of their fellow officers and deliberately failed to intervene to stop the assault, despite

having reasonable opportunities to do so.  (*Id.* ¶¶ 16-18.)  Plaintiff maintained that Defendants'

actions, which were undertaken under color of state law, violated his rights under the Eighth

Amendment.  (*Id.* ¶¶ 6, 9, 12, 20, 22.)  Plaintiff further alleged that Defendants' actions resulted

in serious injuries, including an injury to his shoulder that required surgical repair.  (*Id.* ¶ 19.)

Defendants denied all of Plaintiff's allegations, and maintained that they did not use any force,

much less excessive force, against Plaintiff on the date in question.  (*See generally* ECF No. 10.)

The case was tried between April 26 and April 30, 2021, and the jury returned a verdict

finding Defendants jointly and severally liable for $50,000 in compensatory damages, and

imposing punitive damages of $350,000 against Peralta, $350,000 against Bailey, and $250,000

against Blount.  (ECF No. 44.)  The Court subsequently reduced the punitive damages award to

$200,000 each for Peralta and Bailey and $100,000 for Blount.  (*See* ECF Nos. 56, 57.)

Defendants appealed, challenging several of the Court's trial rulings and the punitive

damages award.  Plaintiff cross-appealed, challenging the Court's remittitur of the jury's punitive

damages award.  The Second Circuit affirmed the Court's ruling in its entirety.  (ECF No. 71.)

## II.   <u>LEGAL STANDARD</u>

Section 1988(b) of Title 42 of the United States Code permits courts to award reasonable attorney's fees and costs to the prevailing party in an action brought under 42 U.S.C. § 1983. *See Lamberty v. Conn. State Police Union*, No. 21-1275, 2022 WL 319841, at *3 (2d Cir. Feb. 3, 2022) (summary order).  "Courts award attorney's fees according to the 'presumptively reasonable fee' (or 'lodestar') method, calculated as the product of the reasonable number of hours worked and a reasonable hourly rate."  *Agudath Israel of Am. v. Hochul*, No. 22-38, 2023 WL 2637344, at *1 (2d Cir. Mar. 27, 2023) (summary order) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 183-84 (2d Cir. 2008), *as amended* (Apr. 10, 2008)).[2]  "[A] court must first set a reasonable hourly rate for each attorney and staff member, keeping in mind all case-specific variables."  *Nnebe v. Daus*, No. 06-CV-4991, 2022 WL 612967, at *3 (S.D.N.Y. Mar. 1, 2022).  "Second, the court must determine the number of hours reasonably expended."  *Id.*  "Third, it must multiply the reasonable hourly rate by the number of hours reasonably expended to determine the 'presumptively reasonable fee.'"  *Id.*  "After this calculation is performed, a district court may, in extraordinary circumstances, adjust the presumptively reasonable fee, but only when it does not adequately take into account a factor that may properly be considered in determining a reasonable fee."  *Robles v. City of N.Y.*, No. 19-CV-6581, 2021 WL 1034773, at *4 (S.D.N.Y. Feb. 26, 2021), *report and recommendation adopted*, 2021 WL 1177462 (S.D.N.Y. Mar. 29, 2021).

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

"The degree of success achieved by the plaintiff is the most critical factor in a district court's determination of what constitutes reasonable attorney's fees in a given case." *Najera v. Kurtishi*, No. 21-CV-1309, 2024 WL 180867, at *3 (S.D.N.Y. Jan. 17, 2024). Furthermore, it is well settled that "[t]he essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011); *see Restivo v. Hessemann*, 846 F.3d 547, 589 (2d Cir. 2017). Thus, "trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox*, 563 U.S. at 838.

## III.   **DISCUSSION**

### A.   **Reasonable Hourly Rates**

"The determination of reasonable hourly rates is a factual issue committed to the court's discretion, and is typically defined as the market rate a 'reasonable, paying client would be willing to pay.'" *Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*, No. 10-CV-1853, 2011 WL 1002439, at *6 (S.D.N.Y. Mar. 16, 2011) (quoting *Arbor Hill*, 522 F.3d at 190)), *aff'd*, 483 F. App'x 634 (2d Cir. 2012) (summary order). "In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson* factors[3]; it should

---

³ "The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Arbor Hill*, 522 F.3d at 186 n.3 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). "A district court need not recite and make separate findings as to all twelve Johnson factors, provided that it takes each into account in setting the attorneys' fee award." *A.G. v. N.Y.C. Dep't of Educ.*, No. 20-CV-7577, 2021 WL 4896227, at *4 (S.D.N.Y. Oct. 19, 2021), *aff'd sub nom. H.C. v. N.Y.C. Dep't of Educ.*, 71 F.4th 120 (2d Cir. 2023) (*per curiam*); *see Zhang v. Zhang*, No. 16-CV-4013, 2021 WL 1154084, at *2 (S.D.N.Y. Mar. 26, 2021) ("A court does not need to make specific findings as to each factor as long as all are considered.").

also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190.  "The party seeking fees bears the burden of demonstrating that its counsel's rates are reasonable" by "produc[ing] evidence, in addition to the attorneys' own affidavits, that the rates are consistent with prevailing rates in the District for lawyers of comparable skill, experience and reputation." *Torres v. City of N.Y.*, No. 18-CV-3644, 2020 WL 6561599, at *4 (S.D.N.Y. June 3, 2020), *report and recommendation adopted*, 2020 WL 4883807 (S.D.N.Y. Aug. 20, 2020).  "Complex cases requiring particular attorney skills and experience may command higher attorney rates." *Torres*, 2020 WL 6561599, at *4.

Plaintiff requests rates of $800 for Edward Sivin and Glenn Miller, partners at Sivin & Miller, LLP[4]; $400 for former associate attorney Clyde Rastetter; and $200 and $150 respectively for legal assistants Jake Ethé and Katie Sinise.  (*See* ECF No. 81-18 ("P's Mem.") at 4-11.)  Defendants argue that these rates are excessive and propose rates of $350 for Sivin and Miller, $250 for Rastetter, $75 for Ethé, and $50 for Sinise.  (*See* ECF No. 83 ("Ds' Mem.") at 4-9.)  I have considered each of the *Johnson* factors, and address the reasonable rates for each individual in turn.

### 1.    Sivin and Miller

First, I consider the hourly rates awarded in similar cases in this District as a "starting benchmark" for a reasonable fee.  *See HomeAway.com, Inc. v. City of N.Y.*, 523 F. Supp. 3d 573, 595 (S.D.N.Y. 2021).  Judges in this District have noted that "rates awarded to experienced civil

---

[4] Plaintiff notes that the firm is now called Sivin, Miller & Roche LLP, as a new partner joined the firm in 2020.  But this lawsuit was commenced by Sivin & Miller, LLP, and the new partner has not participated in this litigation.  (*See* ECF No. 81-1 at 3.)  Thus, for purposes of this Opinion & Order, the Court refers to the firm as Sivin & Miller, LLP.

rights attorneys over the past ten years have ranged from $250 to $600, and that rates for associates have ranged from $200 to $350." *Pardovani v. Crown Bldg. Maint. Co.*, No. 15-CV-9065, 2023 WL 3597615, at *3 (S.D.N.Y. May 23, 2023); *see, e.g., Nnebe*, 2022 WL 612967, at *3; *Payne v. Kirkland*, No. 14-CV-7098, 2017 WL 5952707, at *4 (S.D.N.Y. Nov. 30, 2017). "[T]he top end of the range of reasonable rates in this district for experienced civil rights litigators is typically $600," with the Court "award[ing] up to $650 per hour for highly skilled attorneys in a civil rights action." *Nnebe*, 2022 WL 612967, at *4; *see Barzilay v. City of N.Y.*, No. 20-CV-4452, 2023 WL 2917304, at *3 (S.D.N.Y. Apr. 12, 2023) (citing cases in which awards for attorneys ranged between $250 and $650); *HomeAway.com, Inc.*, 523 F. Supp. 3d at 597-99 (in a "complex and sophisticated" civil rights case, awarding $650 for partner with substantial experience, $600 and $500 for partner and counsel with less experience, $400 for senior associates, $375 for mid-level associate, and $300 for junior associates); *Torres*, 2020 WL 6561599, at *5 (stating that typical rates for junior associates range from $200 to $350 depending on experience); *Decastro v. City of N.Y.*, No. 16-CV-3850, 2017 WL 4386372, at *3 (S.D.N.Y. Sept. 30, 2017) ("[R]ates on the higher end of this spectrum [are] reserved for extraordinary attorneys held in unusually high regard in the legal community."). Thus, Defendants argue that Sivin and Miller's requested rate is excessive because it "exceeds the high-end of what courts typically use in cases of this nature." (Ds' Mem. at 7.)

While the requested rates are, as Defendants contend, on the high end of previous fee awards in this District, courts in this District have also acknowledged that "hourly rates continue to increase over time and more current rates should be used in setting reasonable hourly rates." *Gulino v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, No. 96-CV-8414, 2021 WL 4463116, at *5 (S.D.N.Y. Sept. 24, 2021), *report and recommendation adopted*, 2021 WL 4443628

(S.D.N.Y. Sept. 28, 2021).  Indeed, when the Court follows the trail of precedent establishing the range of rates in this District as $250 to $600, it leads back to *Vilkhu v. City of N.Y.*, No. 06-CV-2095, 2009 WL 1851019, at *4 (E.D.N.Y. June 26, 2009), *vacated and remanded on other grounds*, 372 F. App'x 222 (2d Cir. 2010) (summary order), which was decided almost 15 years ago.  Therefore, that the Plaintiff's requested rates exceed this range does not necessarily make them excessive.  *See Stanbro v. Palou*, No. 19-CV-10857, 2024 WL 1214560, at *4 (S.D.N.Y. Mar. 21, 2024) (finding Sivin and Miller's request for an hourly rate of $700 reasonable and "consistent with fee-shifting caselaw in 2024"); *Rosario v. City of N.Y.*, No. 18-CV-4023, 2023 WL 2908655, at *6 (S.D.N.Y. Jan. 27, 2023) (recognizing that the prevailing rates in the District "have remained static for some time"), *report and recommendation adopted as modified*, 2023 WL 2523624 (S.D.N.Y. Mar. 15, 2023).  Nonetheless, "before a court may award a rate at the higher end of the range, it should look to whether the prevailing party has met its burden of demonstrating the appropriateness of that rate for the attorney in question."  *Harrell v. City of N.Y.*, No. 14-CV-7246, 2017 WL 9538163, at *7 (S.D.N.Y. July 20, 2017), *report and recommendation adopted as modified sub nom. Calvo v. City of N.Y.*, No. 14-CV-7246, 2017 WL 4119280 (S.D.N.Y. Sept. 15, 2017).

Sivin and Miller are civil rights attorneys with 41 and 38 years of experience, respectively.  In support of their fee application, they submitted declarations from four attorneys who attest to their high-level skill, extensive experience and excellent reputations, but the declarations do not provide support that $800 is a reasonable hourly rate.  (*See* ECF Nos. 81-2, 81-3, 81-4, 81-5.)  Rather, the declarations state that $700 and $750 are reasonable rates.[5]  (*See*

---

[5] The declarations submitted with the instant fee application are the same ones that Sivin & Miller, LLP submitted last year in support of their fee application in *Stanbro*, (*see* ECF No. 81-1 ¶ 10), in which they requested rates of $700, *see Stanbro*, 2024 WL 1214560, at *3.

*id.*)  But I credit the attestations insofar as they provide support for Sivin's and Miller's experience, reputation and skill.  Additionally, there are other factors that may support a higher rate – namely, the level of skill required to perform the legal service properly, the undesirability of the case, and the amount involved in the case and results obtained.

Plaintiff submits that counsel "encountered and successfully overcame several formidable challenges, both during the pre-trial stage and, to a greater extent, during the actual trial."  (ECF No. 81-1 ("Sivin Decl.") ¶ 18.)  Specifically, Plaintiff notes that the Defendant officers failed to document the incident and denied throughout the litigation that it had ever occurred; that Plaintiff did not initially know the names of the officers and could not identify other witnesses who saw the incident; and when the firm first learned of the case, Plaintiff's time to file a grievance and exhaust his administrative remedies had long passed.  (*Id.* ¶ 19.)  Furthermore, the Department of Corrections and Community Supervision ("DOCCS") Office of Special Investigations had deemed Plaintiff's claim unsubstantiated, and a DOCCS x-ray report dated two days before the incident documented a diagnosis of "joint disease" in his right shoulder – the same shoulder he claimed the officers had injured.  (*Id.* ¶ 20.)  Additionally, Plaintiff submits that in the pre-trial stage, counsel went to "great lengths" to locate witnesses, and faced unique challenges during the five-day trial because it occurred during the COVID-19 pandemic and one of the non-party witnesses was threatened before testifying.  (*Id.* ¶¶ 24-27.)  Plaintiff argues that these factors and the risk that the State of New York might not indemnify the officers for any judgment against them also made the case undesirable.  (P's Mem. at 10; ECF No. 84-4 ("P's Reply") at 2.)

In *Rosario v. City of N.Y.*, the court awarded rates ranging from $325 to $900, explaining that the requested fees were at the "high end of the market for civil rights litigation" but reasonable because "th[e] case was particularly challenging."  No. 18-CV-4023, 2023 WL

2523624, at *2 (S.D.N.Y. Mar. 15, 2023).  The case was difficult because "Plaintiff's counsel in effect had to relitigate a decades-old murder trial" in the face of evolving civil rights legal doctrines, refute the testimony of two purported witnesses and the police officers, deal with witnesses who were far from New York and reluctant to testify, field two rounds of dispositive motions and disputes over evidentiary issues, and support Plaintiff – who was dealing with mental health issues – through the stress of trial.  *Id.*  The court also found that the complexity of the case was comparable to *Restivo v. Nassau Cnty.*, in which the court awarded $700 to partners where the "case was exceedingly arduous and complex, involving extensive expert analysis and presentation of DNA evidence, spanning eight years and two trials," No. 06-CV-6720, 2015 WL 7734100, at *3 (E.D.N.Y. Nov. 30, 2015), *aff'd sub nom. Restivo v. Hessemann*, 846 F.3d 547 (2d Cir. 2017).

Defendants argue that this case was simple and straightforward because it involved only three defendants, relatively little discovery, no dispositive motions, no motions to compel, and a trial that lasted for four days.  (Ds' Mem. at 1.)  That is all true, but the case was not quite as "simple and straightforward" as Defendants suggest.  While neither the facts nor law were particularly complicated, especially compared to *Rosario* and *Restivo*, Plaintiff faced significant evidentiary challenges, including the lack of documentation, the x-ray report (which required Plaintiff to provide expert testimony), not knowing the identities of corroborating witnesses, and getting one of Plaintiff's witnesses to testify in the face of a death threat.  (*See* P's Mem. at 9-10; Sivin Decl. ¶¶ 19-20, 27.)  Furthermore, the evidentiary challenges and the risk that the State of New York would not indemnify the Defendants made the case undesirable.  (*See* P's Mem. at 9-10; Sivin Decl. ¶ 21.)  To be sure, in *Ekukpe v. Santiago*, another use-of-force case in this District, the court concluded that $450 was a reasonable rate for Sivin and Miller where the case

"involved relatively light discovery, no expert testimony, no pretrial dispositive motions practice, and five days of trial."  No. 16-CV-5412, 2020 WL 1529259, at *3 (S.D.N.Y. Mar. 31, 2020). There, however, the incident was captured by surveillance videos, making the plaintiff's claims easier to prove.  *See Ekukpe v. Santiago*, 823 F. App'x 25, 32 (2d Cir. 2020) (summary order) ("We agree with the district court that a reasonable jury could have concluded that Santiago could have intervened, and that the surveillance video supports the jury's finding.") Furthermore, in the other case from this court that Defendant's counsel cites, (*see* Ds' Mem. at 7), Sivin and Miller were awarded $350 because that is the rate they requested over 15 years ago, *see Sylvester v. City of N.Y.*, No. 03-CV-8760, 2006 WL 3230152, at *5 (S.D.N.Y. Nov. 8, 2006).  I am not persuaded by these cases that a low rate of $350 or $450 is warranted here.  *See DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*, No. 17-CV-4576, 2023 WL 2870484, at *3 (S.D.N.Y. Apr. 10, 2023) ("The inquiry is 'case-specific,' meaning that a reasonable rate for a routine task in a simple case may be quite different from a reasonable rate for a complex task in a challenging case, even when performed by the same firm or the same attorney.").

Despite the challenges, Plaintiff's counsel achieved a favorable result on all claims and against all Defendants.  Thus, the degree of success, "the most critical factor in a district court's determination of what constitutes reasonable attorney's fees" favors a higher hourly rate. *Najera*, 2024 WL 180867, at *3.  Defendants argue that Plaintiff's counsel achieved a low degree of success because Plaintiff ultimately recovered $550,000 in punitive and compensatory damages, only a fraction of the $5 million Plaintiff sought in the complaint.  (*See* Ds' Mem. at 5.)  But the amount a plaintiff seeks in a complaint is rarely a reliable measure, *see Coutin v. Young & Rubicam P.R., Inc.*, 124 F.3d 331, 338 n.4 (1st Cir. 1997) (using *ad damnum* clause of complaint for purpose of determining degree of success "is suspect because the ad damnum is an

inherently artificial construct"); *Alvarez v. Haywood*, No. 06-CV-745, 2011 WL 13130851, at *6 (N.D.N.Y. Aug. 29, 2011) ("[T]he relevant caselaw indicates that courts consider limited success to occur where some of the plaintiff's claims fail, not where the plaintiff cannot prove all of the damages that he requests."), and "the Court's fee award need not be proportional to Plaintiff's recovery," *Stanbro*, 2024 WL 1214560, at *7 (collecting cases).

Overall, Plaintiff succeeded on all claims, as the jury returned a large verdict finding all three officers jointly and severally liable and awarding substantial punitive damages against each.  Given all of the case-specific factors, including the difficulties of the case, the level of skill required, the results obtained, and the need to account for increases over time, the Court concludes that $650 is a reasonable hourly rate for Sivin and Miller.[6]

### 2.    Rastetter

"Courts in this District generally have awarded rates between $200 and $350 for associates in civil rights cases," *Rosario*, 2023 WL 2908655, at *8 (collecting cases), and "[a]n appropriate associate rate depends upon their level of experience," *Kane v. Endicott Meats, Inc.*, No. 19-CV-288, 2021 WL 2183091, at *2 (S.D.N.Y. May 28, 2021).  Plaintiff requests a rate of $400 for Rastetter, an associate attorney who worked primarily on the Second Circuit appeal by

---

[6] Recently the court in *Stanbro* adopted Sivin and Miller's proposed hourly rate of $700, based on their years of experience, declarations from other litigators that $700 is reasonable, and the complexity of the litigation, which had "several moving parts," including "multiple claims against multiple defendants," "called for expert medical testimony," and "culminated in a roughly two-week-long-trial."  *See Stanbro*, 2024 WL 1214560, at *4.  The court also noted that while the case was not "the most complicated or exceptional civil rights case," it was "persuaded by the need to avoid unfairly anchoring compensation."  *Id.*  Likewise here, the Court acknowledges Sivin and Miller's experience and the need to account for increases over time, but concludes that $700 is not warranted based on this case's lesser complexity relative to *Stanbro* – a consolidated action that involved claims of excessive force, deliberate indifference and medical malpractice against five corrections officials and four health care providers and that culminated in a trial twice as long.  *See id.* at *1-2.

preparing Plaintiff's briefs in late 2022 and early 2023, and assisting Sivin with preparing for oral argument in June 2023.  (*See* ECF No. 81-14 ¶ 1.)  Rastetter started his career at the firm after graduating from law school in 2020, and has exclusively worked on civil right cases since then.  (*Id.* ¶¶ 8, 13.)  Plaintiff argues that the requested rate is reasonable given his level of experience in federal court, including a federal judicial internship in law school.  (*Id.* ¶ 14.)

The Court recognizes that "[a]s with rates for partners, . . . rates [for associates] have remained static for some time," *Rosario*, 2023 WL 2908655, but based on Rastetter's few years of practice, a rate above or at the high end of the prevailing range is not warranted.  The Court concludes that a rate of $300 is reasonable for Rastetter given his relatively limited experience at the time he worked on this case.

### 3.      Ethé and Sinise

Non-lawyers are typically awarded rates below $200.  *See HomeAway.com*, 523 F. Supp. 3d at 599 (awarding $150 for legal assistants) (collecting cases); *see also Barzilay*, 2023 WL 2917304, at *3 (citing recent cases in this district approving rates from $100 to $175 for legal assistants, law clerks and paralegals); *Torres*, 2020 WL 6561599, at *5 ("Rates for non-lawyers, *i.e.* paralegals and recent law graduates who have not been admitted to the bar (often referred to as Law Clerks), are less still – below $200 per hour.").  Plaintiff requests rates of $200 for Ethé, who graduated from college in 2017 and has worked as a legal assistant at Sivin & Miller, LLP since 2018, and $175 for Sinise, who graduated from college in 2020 and worked as a political intern before joining Sivin & Miller, LLP as a legal assistant.[7]  (*See* Sivin Decl. ¶¶ 12, 14.)

---

[7] Plaintiff's papers do not state when Sinise began working as a legal assistant at Sivin & Miller, LLP, but her billing records begin on March 8, 2021 and end on April 30, 2021.  (*See* ECF No. 81-16.)

Defendants argue that Ethé's rate should be $75 – the same rate set for him in *Ekukpe*, where the court stated that "courts in this district have recognized that $75 per hour is the customary billing rate for paralegals in this district," and that while a higher award "may be justified for a paralegal with extensive experience," a higher rate was not justified for Ethé who had little to no experience.  2020 WL 1529259, at *5.  (*See* Ds' Mem. at 9.)  It has been four years, however, since *Ekukpe* was decided, and by the time he worked on this case, Ethé had gained substantial experience.  Moreover, his skill level is demonstrated by the fact that some of his work is similar to that done by junior associates.  (*See* Sivin Decl. ¶ 13; ECF No. 84 ¶¶ 3-4.) Accordingly, he is entitled to a higher hourly rate, and the Court finds that a rate of $150 is reasonable.  *See Stanbro*, 2024 WL 1214560, at *5 (awarding the same).  Because Sinise has less experience, the Court agrees that her rate should be lower, but not lower than the prevailing range of $100 to $175.  *Barzilay*, 2023 WL 2917304, at *3.  As she was just out of college at the time of her work on this case, the Court concludes that a rate of $100 is reasonable for Sinise.

### B.    <u>Reasonable Hours</u>

"After determining the reasonable rates, the Court must determine a reasonable number of hours to be billed."  *A.G. v. N.Y.C. Dep't of Educ.*, No. 20-CV-7577, 2021 WL 4896227, at *8 (S.D.N.Y. Oct. 19, 2021), *aff'd sub nom. H.C. v. N.Y.C. Dep't of Educ.*, 71 F.4th 120 (2d Cir. 2023).  "Counsel . . . must prepare and submit to the district court contemporaneous time records of the work performed, specifying the date, the hours expended, and the nature of the work done."  *Raja v. Burns*, 43 F.4th 80, 86-87 (2d Cir. 2022).

"The Court's task is to make a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended."  *A.G.*, 2021 WL 4896227, at *5.  "In determining the number of hours reasonably expended on a case, a

district court properly excludes documented hours that are excessive, redundant, or otherwise unnecessary." *Raja*, 43 F.4th at 87. "The court may also decrease the total award from the claimed amount because of vagueness, inconsistencies, and other deficiencies in the billing records." *Id.* "To address such redundancy or vagueness, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application," *id.*, and "is not obligated to undertake a line-by-line review of the prevailing party's extensive fee application," *Barzilay*, 2023 WL 2917304, at *3. "The court may also reduce an attorney's hourly rate for time spent on clerical tasks or apply an across-the-board reduction to account for time spent on clerical tasks (or block-billed time entries reflecting a mix of clerical and legal work), although the court is not required to make such reductions." *Raja*, 43 F.4th at 87.

Plaintiff seeks compensation for 189 hours expended by Sivin, 305.5 hours expended by Miller, 188.62 hours expended by Rastetter, 83.78 hours expended by Ethé, and 76.7 hours expended by Sinise.[8] In support, Plaintiff's counsel submitted billing records, (*see* ECF No. 81-12 ("Sivin Billing"); ECF No. 81-13 ("Miller Billing"); ECF No. 81-14 ("Rastetter Billing"); ECF No. 81-15 ("Ethé Billing"); ECF No. 81-16 ("Sinise Billing"); ECF No. 84-2; ECF No. 84-3). Defendants argue that the hours billed are excessive, the billing records are deficient and vague, and the allocation of tasks was inappropriate. (Ds' Mem. at 9-14.)

The Court has reviewed the underlying billing records, and while they are mostly adequate, the Court finds that there are a few issues, discussed below, that warrant reduction.

---

[8] Sivin's and Ethé's hours include 2.8 and 10.27 additional hours, respectively, for the hours spent on the reply memorandum in support of the instant motion. (*See* P's Reply at 11 n.10.)

### 1.      Vague and Block-Billed Time Entries

With respect to vagueness, "[c]ounsel is not required to record in great detail how each minute of his time was expended, but he must identify the general subject matter of his time expenditures." *Raja*, 43 F.4th at 87. "Vagueness becomes a problem – and a basis for reduced fees – when entries cannot be said to document the hours claimed." *Stanbro*, 2024 WL 1214560, at *9. Similarly, block billing – "the practice of lumping multiple distinct tasks into a single billing entry" – is "generally disfavored because it can complicate the district court's task of determining the reasonableness of the billed hours." *Raja*, 43 F.4th at 87. But it "is by no means prohibited in this Circuit because block billing will not always result in inadequate documentation of an attorney's hours." *Id.* The practice is "permissible as long as the district court is still able to conduct a meaningful review of the hours for which counsel seeks reimbursement." *Id.* It is thus "most problematic where large amounts of time (e.g., five hours or more) are block billed." *Id.* at 89. Thus, block billing "is not *per se* prohibited, but where such entries make it hard to discern the reasonableness of time allotted to a given task, courts do consider its prevalence in deciding whether reduction is appropriate." *Mayo-Coleman v. Am. Sugars Holding, Inc.*, No. 14-CV-79, 2019 WL 1034078, at *5 (S.D.N.Y. Mar. 5, 2019). Where "the amount of time spent on any individual activity cannot be discerned" but "block-billed entries combine related tasks or contain enough detail so as to afford confidence that the time billed was productively spent," *Mason Tenders Dist. Council Welfare Fund v. Gibraltar Contracting, Inc.*, No. 18-CV-366, 2020 WL 5904357, at *8 (S.D.N.Y. Oct. 6, 2020), *report and recommendation adopted*, 2020 WL 6363960 (S.D.N.Y. Oct. 29, 2020), a modest reduction may be justified, *see id.*, but is not required, *see Raja*, 43 F.4th at 87.

The billing entries here are generally adequate as to clarity.  Most of them sufficiently describe the task being done, and although many of them refer to "review" of documents, as Defendants point out, (*see* Ds' Mem. at 10), those entries explain the file or documents being reviewed such that the Court can understand the task in context, (*see e.g.*, Sivin Billing at 7/3/19 ("Review initial notices from court"); *id.* at 12/14/19 ("Review scheduling order from court"); *id.* at 8/10/20 ("Begin reviewing file for prep of EBTs"); Miller Billing at 3/16/21 ("Review draft of JPTO"); *id.* at 3/27/21 ("Review of Dr. Ranawat's report and associated records"); *id.* at 4/6/21 ("Review more caselaw cited by Defendants in their opp to Motion in Lim.")[9]; Rastetter Billing at 1/30/23 ("Reviewing Def-Appellants' Response & Reply Brief")).  Additionally, a handful of descriptions are vague but, in context, the Court can determine what the time expenditure was for and "whether the time expended on the activity [was] reasonable." *Nnebe*, 2022 WL 612967, at *7 (S.D.N.Y. Mar. 1, 2022).  (*See* Ethé Billing at 10/5/20 (billing 5.20 hours for "Begin draft" after billing for "Read defendants' motion to preclude," "Call Ed to discuss magalios opp strategy," and "Email ed abt getting draft to him tomorrow"); *id.* at 10/6/20 (billing 3.06 hours for "Continue draft (in office)"); Sinise Billing at 3/8-3/12 (billing 15 hours for "Exhibit binder/reading file" weeks before the trial).)  Furthermore, although some of them arguably read as duplicative, especially Rastetter's documenting several entries for "Reading / digesting / taking notes on trial transcript + record on appeal," (Rastetter Billing at 10/28/22 to 11/8/22), and "Drafting plaintiff-appellee's brief," (*id.* at 11/8/22 to 11/28/22), those tasks are ones that ordinarily cannot be completed in one sitting and so the Court is able to understand the subject matter of and reason for the time spent.  In the Court's view, most of the descriptions adequately

---

[9] In their brief, Defendants cite Miller's billing entries as occurring in 2019, but the timesheet reflects that these entries occurred in 2021.  (*See, e.g.*, Ds' Mem. at 10 n.5, 11 n.7; *see also* Miller Billing at 3/8/21.)

"identify the general subject matter of [the] time expenditures."  *Raja*, 43 F.4th at 87; *see Medina v. Buther*, No. 15-CV-1955, 2019 WL 4370239, at *18 (S.D.N.Y. Sept. 12, 2019) ("[D]espite being fairly general, time entries using terms such as 'case preparation' or 'meeting' have been found to be sufficiently concrete, when viewed in context, to permit the court to make a judgement [*sic*] about the reasonableness of the total hours claimed.").

With respect to block billing, the Court finds that the block-billed entries "contain enough detail so as to afford confidence that the time billed was productively spent."  *Mason Tenders Dist. Council Welfare Fund*, 2020 WL 5904357, at *8.  (*See, e.g.*, Sivin Billing at 8/12/20 (billing 5 hours for "More EBT prep and discussions and emails with client re same"); *id.* at 8/17/20 (billing 8.5 hours for "Defend depositions of plaintiff and Lisa Magalios; prep for tomorrow's depos of Bailey and Peralta"); Miller Billing at 3/11/21 (billing 6.5 hours for "Start work on P direct" and several subtasks); *id.* at 3/30/21 (billing 6 hours for "Continue work on GV direct" and several subtasks).)  The most significant instance of block billing is Sinise's billing 15 hours for "Exhibit binder/reading file" over the course of 5 days, but the Court can determine based on context that the entry relates to trial preparation.  (*See* Sinise Billing at 3/8-3/12.)

The Court concludes that the vagueness and block billing issues that Defendants raise do not (with the exception described in footnote 10 below) warrant a fee reduction.

## 2.    Allocation of Tasks

Defendants also argue that a fee reduction is warranted because the senior partners billed time for work that could have been handled by a junior lawyer.  (*See* Ds' Mem. at 12-13.) "Courts frequently reduce fee requests where work that could have been handled by more junior lawyers was instead performed by a senior partner."  *Union Cent. Life Ins. Co. v. Berger*, No. 10-

CV-8408, 2013 WL 6571079, at *6 (S.D.N.Y. Dec. 13, 2013) (collecting cases). Additionally, Defendants argue that all three attorneys billed for clerical tasks that should have been performed by a paralegal or legal assistant. (*See* Ds' Mem. at 13-14.) "Examples of clerical tasks include sending and receiving faxes, requesting and receiving medical records, serving papers, and hand-delivering courtesy copies of filings to the courthouse." *Gym Door Repairs, Inc. v. Total Gym Repairs*, No. 15-CV-4244, 2023 WL 6519626, at *16 (S.D.N.Y. Mar. 31, 2023), *report and recommendation adopted sub nom. Gym Door Repairs v. Total Gym Repairs*, 2023 WL 6390156 (S.D.N.Y. Sept. 29, 2023), *reconsideration denied*, 2023 WL 7220812 (S.D.N.Y. Nov. 1, 2023). "The key inquiry remains the question of whether a paying client would be willing to pay the fee." *Id.*

Defendants cite several entries in which Sivin and Miller bill for research, drafting, and clerical tasks. (*See* Ds' Mem. at 13-14.) Sivin and Miller's research and drafting entries, however, are few and either for a short amount of time or reasonable in context. For example, most of Sivin and Miller's drafting entries are for substantive legal documents, such as the complaint and discovery documents. Thus, the Court will not apply a reduction for these entries. (*See, e.g.*, Sivin Billing at 4/19/18 (billing 2.3 hours for "Review entire file from client; research officers on internet; draft letter to client; draft memo re next steps"); *id.* at 3/15/21 (billing .8 hours for "Legal research on circumstantial evidence of 'sadistic and malicious'"); *id.* at 3/21/21 (billing 1.5 hours for "Research issue of qualified immunity for Eighth Amendment violation"); *id.* at 7/2/19 (billing 1.5 hours for "Draft complaint for filing in SDNY"); *id.* at 12/16/19 (billing 3.5 hours for "Draft Rule 26 exchange and discovery demands"); Miller Billing at 4/26/21 (billing for legal research on nominal damages and "FRE 804" as a part of trial prep).)

Some reduction is appropriate, however, for instances in which Sivin, Miller, and Rastetter billed for clerical tasks. *See Stanbro*, 2024 WL 1214560, at *10 ("There is nothing wrong with lawyers performing administrative tasks, especially at smaller firms. But a client may not expect to pay for that time at the rate charged for legal work. Courts thus have the legal authority and discretion to apply an across-the-board reduction to the hours billed for time spent on clerical tasks."); *Siegel v. Bloomberg L.P.*, No. 13-CV-1351, 2016 WL 1211849, at *7 (S.D.N.Y. Mar. 22, 2016) ("With respect to tasks that are "purely clerical," such as downloading, scanning, or copying documents and organizing files, such work is generally not compensable, whether performed by an attorney or a paralegal."); *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 540 (S.D.N.Y. 2008) ("Under fee-shifting statutes, attorneys may not be compensated at their regular hourly rates for time spent performing clerical tasks. Rather, they should be compensated at the rate for clerical employees, or, if the task at issue is the type included in overhead, they should not be compensated at all."). (*See* Sivin Billing at 3/31/20 (billing 1.7 hours for "Assemble medical records for Dr. Varlotta"); *id.* at 6/4/23 and 6/5/23 (billing 3.9 hours for indexing trial transcript); Miller Billing at 3/31/21 (billing for "Organize DOCCS medical chart in preparation for trial ex. Pagination")[10]; Rastetter Billing at 11/28/22 (billing 2 hours for "Printing our principal brief, binding it, and delivering to the 2d Cir").

---

[10] Miller billed 2.5 hours for "[o]rganiz[ing] DOCCS medical chart in preparation for trial ex. Pagination" and contacting an assistant attorney general to "discuss joint exhibit." *See* Miller Billing at 3/31/21. The block-billed entry does not specify how much time was spent on each task, but in accordance with "do[ing] rough justice," *Fox*, 563 U.S. at 838, and considering how long discussions between counsel would typically take, the Court will allot half an hour to the discussion, which is properly billed at the attorney rate, and two hours to the clerical task.

The Court will therefore reduce the award for those 9.6 hours from the lawyer rate to a paralegal rate of $125 (the mid-point of Ethé's rate of $150 and Sinise's of $100). This results in a reduction of $2,940 for Sivin, $1,050 for Miller, and $350 for Rastetter.

### 3. Hours Billed for the Fee Motion

In connection with this fee application, Plaintiff sought fees for 25.6 hours spent by Sivin and 15.31 hours spent by Ethé. (*See* Sivin Decl. ¶ 34.) Defendants argue that Sivin's hours are excessive. (Ds' Mem. at 11.) Plaintiff also reports an additional 2.8 hours spent by Sivin and 10.27 hours spent by Ethé on the reply, for a total of 53.98 hours spent on the fee application. (P's Reply at 11 n.10.) This amount exceeds what courts in this District usually approve. *See City of Almaty, Kazakhstan v. Ablyazov*, No. 15-CV-5345, 2023 WL 8241607, at *6 (S.D.N.Y. Nov. 8, 2023) (noting that 33.1 hours was high but reasonable because counsel had to sort through voluminous bills incurred over seven years and bulk of time spent was incurred by junior associate), *report and recommendation adopted sub nom. City of Almaty, Kazakhstan v. Sater*, 2023 WL 8237115 (S.D.N.Y. Nov. 28, 2023). Defendants contend that this is a routine case, most of the exhibits were recycled from prior actions, and Plaintiff's counsel did not take the time to standardize the billing record format across all five staff. (Ds' Mem. at 11.) Plaintiff counters that the Court should consider the hours spent on the fee application in proportion to the total time spent on the case based on the theory in *Johnson v. Mauro*, No. 16-CV-622, 2019 WL 5842765, at *8 (N.D.N.Y. Nov. 7, 2019) (finding that because the Second Circuit and other courts have awarded fees for fee applications that comprised 8-24% of the total fee sought, fee application that amounted to 11% of total time claimed was reasonable). (*See* P's Reply at 7.) The Court declines to apply that logic; it is not persuaded that the effort required for a fee application necessarily or even usually correlates with the complexity or duration of the case.

While larger amounts have been approved, generally "courts have held that up to thirty hours may be reasonably spent in preparing and defending a fee application," *Stanbro*, 2024 WL 1214560, at *11, and the Court agrees with Defendants that Plaintiff has not provided any justification for the additional time spent.  Plaintiff argues that the 40.91 hours spent on the initial application is well within the range approved by courts, (*see* P's Reply at 7-8), but cites just one case in which the court reduced the hours spent on the fee application to 44.2 by cutting the hours spent on each task but not considering the reasonableness of the hours as a whole, *see R.G. v. N.Y.C. Dep't of Educ.*, No. 18-CV-6851, 2019 WL 4735050, at *5 (S.D.N.Y. Sept. 26, 2019).  (*See* P's Reply at 7-8.)  And here the total sought, including 13 hours for the reply, is well above that level.

The Court finds that the 53.98 hours spent on the fee application are excessive, and thus warrant a reduction to 35 hours.  Because 53% of the work on the fee motion was done by Sivin and 47% was done by Ethé, the 18.98 hours cut will be allocated between them in the same ratio, resulting in a reduction of 10.0594 hours, and therefore $6,538.61, for Sivin, and 8.9206 hours, and therefore $1,338.09, for Ethé.

### 4.      Plaintiff's Cross-Appeal

Lastly, Defendants argue that the Court should exclude the hours spent on Plaintiff's unsuccessful cross-appeal, which challenged the Court's remittitur of the jury's punitive damages award.  (Ds' Mem. at 14.)  "In fixing the lodestar the court may exclude any hours spent on severable unsuccessful claims."  *Green v. Torres*, 361 F.3d 96, 98 (2d Cir. 2004).  "But where . . . the plaintiff's claims involve a common core of facts or are based on related legal theories, and are therefore not severable, attorney's fees may be awarded for unsuccessful claims as well as successful ones."  *Id.*  This concept has been applied in the context of unsuccessful

cross-appeals.  *See Serin v. N. Leasing Sys*., Inc., No. 06-CV-1625, 2013 WL 1335662, at *3 (S.D.N.Y. Apr. 3, 2013) (declining to exclude time spent on preparing for an ultimately abandoned cross-appeal because the cross-appeal "was reasonably litigation strategy" and "a reasonable defensive measure brought to counteract Defendants' appeal"); *Hines v. City of Albany*, 2017 U.S. Dist. LEXIS 222260, *16 (S.D.N.Y. Nov. 30, 2017) (reducing fee award for hours spent on Plaintiffs' cross-appeal because "the claims Plaintiffs raised in their cross-appeal were not based on similar facts or legal theories as their defense against Defendants' appeal"). Defendants argue that the Court should exclude the hours spent on the cross-appeal because it "'was not an attempt to protect the Court's earlier decision, but rather to convince the Second Circuit to reverse portions of [the court's decision].'" (*See* Ds' Mem. at 14 (quoting *Hines*, 2017 U.S. Dist. LEXIS 222260, at *13).)  Plaintiff counters that the cross-appeal was reasonable litigation strategy and that "Plaintiff's one issue on cross-appeal – that this Court should not have reduced the jury'[s] punitive damages award – was inextricably intertwined with Defendants' argument on appeal that the punitive damages award, even as reduced by this Court, was excessive."  (P's Reply at 9.)

Some fee reduction is warranted for the hours spent on Plaintiff's cross-appeal.  As in *Hines*, the purpose of the cross-appeal was to challenge the Court's decision to remit the punitive damages award.  Plaintiff could have defended Defendants' appeal claiming that the award as remitted was excessive without challenging the remittitur itself by cross-appeal.  The cross-appeal was not unreasonable as a matter of strategy, but it was not successful, *see Magalios v. Peralta*, No. 22-519-PR, 2023 WL 4618349, at *5 (2d Cir. July 19, 2023), and so counsel should not be compensated for it.  That said, virtually everything Plaintiff said in its main appellate brief in support of its cross-appeal would have been said anyway in defense of Defendants' appeal of

the punitive damages award, as both required counsel to argue the reprehensibility of the conduct and to analyze case law on punitive damages.[11]  Accordingly, it is only the reply brief on Plaintiff's cross-appeal that represents work that would not have been done absent the unsuccessful cross-appeal.  Accordingly, the Court excludes from the award $6,839.16 for the 22.7972 hours spent by Rastetter on the reply brief.

### C.   Costs

Plaintiff also seeks reimbursement for $6,764.85 in litigation expenses.  "An award of costs normally includes those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients," and a request for costs must be supported by adequate documentation.  *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020).  Plaintiff has provided supporting documentation for its request, and Defendants raise no objection to the reimbursement of costs.  Accordingly, the Court awards $6,764.85 in costs.[12]

### D.   Total Award

Based on the above determination of reasonable hourly rates and reductions, the Court awards the attorneys' fees as follows:

| Attorney/Legal Assistant | Rates | Hours | Lodestar |
|---|---|---|---|
| Edward Sivin | $650 | 189 | $122,850 |
| Glenn Miller | $650 | 305.5 | $198,575 |
| Clyde Rastetter | $300 | 188.62 | $56,586 |
| Jack Ethé | $150 | 83.78 | $12,567 |
| Katie Sinise | $100 | 76.7 | $7,670 |

[11] Indeed, in opposition to Defendants' contention that the punitive damages award should be reduced, Plaintiff's brief simply incorporated his argument that the Court should not have remitted that award.  (*See* ECF No. 81-9 at 69.)

[12] Plaintiff states in his reply memorandum that the litigation expenses are $6,462.35. (*See* P's Reply at 11.)  The Court awards $6,764.85 in costs, as requested in the opening memorandum and as reflected in the supporting documentation listing the litigation expenses. (*See* ECF No. 81-17.)

| Total Lodestar | **$398,248** |
|---|---|
| Lodestar As Reduced | $379,192.14 |
| Costs | $6,764.85 |
| **Total Fee Award** | **$385,956.99** |

IV.     **CONCLUSION**

      For the foregoing reasons, Plaintiff's motion for attorneys' fees is GRANTED to the

extent that Plaintiff is awarded $379,192.14 in attorneys' fees and $6,764.85 in costs.  The Clerk

of Court is respectfully directed to terminate the pending motion, (ECF No. 81).

**SO ORDERED.**

Dated:  April 26, 2024
         White Plains, New York

                                                    _____
                                                  CATHY SEIBEL, U.S.D.J.